DORA RUBENSTEIN, Respondent, *v.* BARNET RUBENSTEIN, Appellant.

*Alienation of a husband's affections by his father — proof of mere threats on the father's part is not sufficient — a letter written by the husband to the wife two years after suit brought is incompetent.*

In an action brought by a wife against her father-in-law to recover damages for alienating the affections of her husband and enticing him away from her, evidence that the defendant, upon learning that his son had married the plaintiff, became exasperated and declared that he would not allow his son and his wife to live together if it cost him $10,000 or if he lost his last penny, not coupled with any evidence tending to show that he ever attempted to carry out his threat or that he ever persuaded his son not to live with his wife or ever harbored him after his marriage, is insufficient to establish liability on the part of the defendant.

A letter written to the plaintiff by the husband more than two years after the action was begun, is not admissible against the defendant as tending to show the existence of affectionate relations between the plaintiff and her husband and as having a bearing upon the question of damages.

APPEAL by the defendant, Barnet Rubenstein, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 19th day of November, 1900, upon the verdict of a jury for $5,000, and also from an order entered in said clerk's office on the 20th day of November, 1900, denying the defendant's motion for a new trial made upon the minutes.

*Charles Haldane*, for the appellant.

*William L. Mathot*, for the respondent.

PATTERSON, J.:

The defendant is the father of the plaintiff's husband. In January, 1896, according to the date of the summons, the plaintiff brought this action against the defendant and his wife to recover damages for alienating the affections of her husband and enticing him away from her. The allegations of the complaint are: That from the time of the plaintiff's marriage (which is sworn to have been on the 6th of December, 1894), until the 20th of January,

1895, she and her husband were living happily together and she was affectionately cherished and loved by him ; that in and between the months of December, 1894, and January, 1895, while the plaintiff was being loved and cherished by her said husband, "the defend- ants, well knowing him to be the husband of the plaintiff, and wrongfully and unlawfully contriving and intending to injure plain- tiff and to deprive her of his company, society, aid and support, maliciously enticed him away from the plaintiff, and have ever since detained and harbored the plaintiff's husband in their own residence, against the consent of the plaintiff and in opposition to her utmost peaceable efforts to obtain him from the defendants' custody, control and influence, and the defendants ever since said expulsion have refused to permit this plaintiff to visit or live with her said hus- band." The answer is substantially a general denial of the allega- tions of the complaint. Pending suit the defendant's wife died. The cause was brought to trial and a verdict was rendered against the surviving defendant for $5,000, and from the judgment entered thereon and from an order denying a motion for a new trial the defendant appeals.

The evidence was altogether insufficient to establish the allega- tions of the complaint. It was proven that the plaintiff and a son of the defendant were employed in the same factory ; that illicit relations existed between them, which resulted in the pregnancy of the plaintiff. Upon the ascertainment of that fact, the defendant's son married the plaintiff on the 6th of December, 1894, and from that time forward never lived with her. It was not shown that the defendant was cognizant of the marriage until after it took place, when he was informed of it by two female relatives of the plaintiff, and upon its being announced to him he became exasperated and declared that he would not allow his son and his wife to live together, and stated that if it cost him $10,000 he would not allow him to live with her; his son was present at the interview, and that the defendant told him not to talk with one of the witnesses, and that if he lost his last penny he would not allow him to live with her. This is only evidence of a threat, and there is not one word of testimony in the case to show that it was ever carried out or that the defendant ever in any way acted upon it or persuaded his son not to live with his wife, or that he ever harbored him after-

wards. The plaintiff was living with her mother at the time of the marriage; her husband never lived with her there, and, according to her own story, she never lived with him and they never occupied the same apartments as husband and wife. Within two weeks after the marriage she had him arrested for non-support. Ordinarily, in an action of this character, it is necessary to show some direct act of interference on a defendant's part tending to prove that he was keeping one of the married parties away from the other. (*Whitman* v. *Egbert*, 27 App. Div. 374.) It may be conceded that in an action against the parents of one of the married parties, the motive inducing acts tending to the alienation of the affections of a son from his wife may be given in evidence as characterizing the act, but it nevertheless remains to be proven that something has been done by the defendant which caused the alienation of affection or the desertion or abandonment of a wife or husband.

As said before, the evidence in this case is wholly insufficient to show either that the defendant advised or persuaded his son to leave his wife or that he harbored him with the intention of keeping him away from his wife. The only testimony with reference to harboring is, that the plaintiff's husband was seen twice in a long interval of time at his father's house. It is not shown that he lived there or that he was even an habitual visitor. A case was not made out by testimony merely of the ebullition of anger on the part of the father when he was first informed of what he regarded as an odious marriage of his son, and random declarations constituting a mere threat without a syllable of evidence to show that anything was done to carry out that threat. But, further, evidence was improperly admitted on the trial of the action. A letter written to the plaintiff by her husband was offered to show the existence of affectionate relations between them, and it was admitted on the ground that it had some bearing upon the question of damages. It was not admissible for any purpose. It was written two years and more after this action was begun. A letter of that character, if written while the parties were living together, might have been admissible to show that the plaintiff and her husband, prior to any alleged act of interference on the part of the defendant, were living in harmonious relations; but her husband's declarations, made so long after the action was begun, were not competent against the defendant.

The judgment and order should be reversed and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., INGRAHAM and McLAUGHLIN, JJ., concurred; HATCH, J., concurred in result.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.