# ELLA LOVE, Respondent, v. JOHN E. LOVE et ux., Appellant.

### Kansas City Court of Appeals, March 2, 1903.

1. **Husband and Wife: ALIENATION OF HUSBAND'S AFFEC-TIONS: EVIDENCE: PARENT AND CHILD.** Evidence relating to the alienation of the husband's affections is found ample to support a verdict, and while a parent has the right and is not liable for opposing the marriage of his son, he is not justified to disrupt the marriage tie after consummation.

2. ——: ——: **INSTRUCTION: INTENTIONAL.** To separate man and wife is in itself a wrongful and unlawful act, and instructions which require the jury to find that defendants intentionally did so need not add that they wrongfully did so.

3. ——: ——: **PUNITIVE DAMAGES: HARMLESS ERROR.** An instruction relating to punitive damages for separating man and wife, if wrong, is held harmless since the jury found no such damages.

4. ——: ——: **JOINT JUDGMENT: PETITION.** A petition failed to allege a joint cause of action against two defendants. Advantage should have been taken thereof by demurrer, and can not be taken after joint judgment against defendants.

5. ——: ——: **EVIDENCE: POSTSCRIPT: ILL WILL.** To a letter from a witness, read in evidence, there appeared a postscript the writing of which the witness denied, and the objecting party failed to prove his handwriting. *Held*, the postscript was properly excluded; and the more so as the object of its introduction was to show the ill will of the witness, which had been already abundantly established.

6. ——: ——: **EVIDENCE: DECLARATIONS OF HUSBAND: HEARSAY.** In an action by a wife against the husband's father and mother for alienating his affections, the declarations of the husband in relation to being compelled to marry plaintiff are hearsay and not admissible.

7. ——: ——: ——: **DEFENDANTS' FINANCIAL CONDITION.** In an action by a wife against her husband's father and mother for alienating the husband's affections, the financial condition of the defendants is proper evidence.

8. ———: ———: ———: DEFENDANTS' OBJECTION TO MAR-RIAGE. In an action by a wife against her husband's father and mother for alienating his affections, the fact that the father opposed the marriage is not a matter for the consideration of the jury, but in this case such opposition being practically admitted, evidence of it was harmless.

9. ———: ———: MEASURE OF DAMAGES. In an action by a wife for alienating her husband's affections, the amount of damages is peculiarly within the province of the jury and without any scale of computation upon any compensative theory, and the courts will not interfere unless flagrant abuse is shown.

Appeal from Maries Circuit Court.—*Hon. James E. Hazell*, Judge.

AFFIRMED.

*W. S. Pope* and *Thomas M. & Cyrus H. Jones* for appellants.

(1) The instruction offered at the close of plaintiff's evidence should have been given, because there was no substantial testimony offered which warranted the submission of the case to the jury. Asker v. Sharper, 25 Mo. App. 1; Stokes v. Burns, 132 Mo. 214; Weaver v. Railroad, 60 Mo. App. 207; Pueschell v. Iron Works Co., 79 Mo. App. 464; Payne v. Williams, 63 Tenn. (4 Baxt.) 583; Pollock v. Pollock, 29 N. Y. 37; Young v. Young, 8 Wash. 81, 35 Pac. 592; Tucker v. Tucker, 74 Miss. 93, 19 So. 955; Rice v. Rice, 104 Mich. 371, 62 N. W. 833; Huhling v. Huhling, 32 Ill. App. 519; Glass v. Bennett, 89 Tenn. (5 Pickle) 478; Hutchinson v. Peak, 5 Johns. 195; Reed v. Reed, 6 Ind. App. 317; Olinda v. Hall, 34 N. Y. 777; Thompson on Trials, sec. 2245; Commissioners v. Clark, 94 U. S. 278; State to use v. Springgate, 51 Mo. App. 619; Smith v. Railroad, 52 Mo. App. 42; Huhling v. Huhling, 32 Ill. App. 522; Tucker v. Tucker, 74 Miss. 93; Rice v. Rice, 104 Mich. 371; (2) Plaintiff's witness, W. E. Heady, was permitted by the court over the objections of appellants to testify to the

declarations of appellant, John E. Love, father of John Rainey Love, before the alleged marriage. This testimony was inadmissible and constituted palpable error, because it was already in evidence that John Rainey Love was the son of John E. Love and that he was a minor, about nineteen years of age. Rice v. Rice, 104 Mich. 371; Tucker v. Tucker, 74 Miss. 93; Pollock v. Pollock, 29 N. Y. 37; Schouler on Domestic Relations (5 Ed.), sec. 51, page 71 and 72; Huhling v. Huhling, 32 Ill. App. 522. (3) The court committed error in not permitting defendant John E. Love to testify to the declarations made to him by his son, John Rainey Love, at the first conversation which appellant John E. Love had with his minor son after the marriage to the respondent. The appellant should have been permitted to have shown that John Rainey Love stated to his father in the first conversation after the marriage to respondent that he was compelled to marry the respondent on account of threats made against him by her brothers; that they threatened to kill him and he was afraid they would kill him, and that was the reason he married her. Bennett v. Smith, 21 Barb. 439; Bailey v. Bailey, 94 Ia. 598; Perry v. Lovejoy, 49 Mich. 530; McKinzie v. Louslachger, 113 Mich. 171; Rutt v. Rounds, 64 Vt. 439; Fratina v. Caslina, 66 Vt. 273; 1 Greenleaf on Evidence (16 Ed.), secs. 108, 102a and 162b. (4) Instruction No. 1, given on behalf of plaintiff, assumed that defendants acted jointly. Tucker v. Tucker, 74 Miss. 93; Rice v. Rice, 104 Mich. 371; Brown v. Brown, 124 N. C. 19, 70 Am. St. 575; Westlake v. Westlake, 34 Ohio St. 621. (5) Instruction number three given for plaintiff assumed the controverted questions in the case to be true. The instruction is, therefore, grossly erroneous, vicious in its scope, and constitutes reversible error. Plumber v. Milan, 70 Mo. App. 601; Shoe Co. v. Hilig, 70 Mo. App. 310; Peck v. Richey, 66 Mo. 121; Merritt v. Given, 34 Mo. 98; Moffitt v. Conklin, 35 Mo. 453; McDonald v. Beale, 55 Ga. 288; American v. Rim-

pert, 75 Ill. 288; Walters v. Railroad, 41 Ia. 71; Ins. Co.
v. Baker, 94 U. S. 610; Maxwell v. Railroad, 85 Mo. 95.
(6) Instruction number four given by the court on the
part of the plaintiff told the jury, "that in addition to
compensatory damages, but separate and apart there-
from, that if they believed that the injuries were in-
flicted wantonly and maliciously by the defendants they
should assess the plaintiff such punitive damages as they
might think proper," etc. Shoe Co. v. Hilig, 70 Mo.
App. 310; Orscheln v. Scott, 79 Mo. App. 540; Peck v.
Richey, 66 Mo. 114; Ins. Co. v. Seminary, 52 Mo. 480;
Andreas v. Ketcham, 77 Ill. 377; Chase v. Horton, 143
Mass. 118; State v. Herrington, 12 Nev. 125. (7) De-
fendants' motion in arrest of judgment should have
been sustained because in this case a joint trespass is
charged and averred in plaintiff's petition, and a joint
action will not lie against a husband or wife for a joint
trespass. The husband alone would be liable. Dailey
v. Houston, 58 Mo. 367; Flesh v. Lindsay, 115 Mo. 14.
(8) The verdict of the jury in this case is excessive,
not supported by the evidence and must have been the
result of mistake, passion, prejudice or undue influence.
The court should have sustained appellants' motion for
new trial. In overruling the motion for new trial the
court committed error. Lawson v. Mills, 130 Mo. 170;
Dota v. Steinberg, 25 Mo. App. 328; Blackwell v. Adams,
28 Mo. App. 61; Walton v. Railroad, 49 Mo. App. 620.
(9) The court permitted the respondent, over appell-
ant's objections, to interrogate J. E. Love, one of the
appellants, as to the amount of his property and as to
what he was worth at the time of the trial. Overhalt v.
Veiths, 93 Mo. 422; Stevens v. Railroad, 96 Mo. 214.

*Crites & Garrison* for respondent.

(1) To say that a showing of these facts would
not warrant the case going to the jury, or a recovery by
plaintiff, is to assert an absurd proposition, and one

wholly unwarranted by the law or the facts in the case. Nichols v. Nichols, 147 Mo. 387; Hodgkinson v. Hodgkinson, 43 Neb. 269; Hartpence v. Rogers, 143 Mo. 623. That the acts complained of were wrongfully done is clearly shown by the evidence. Hartpence v. Rogers, supra; Nichols v. Nichols, 147 Mo. 387, and cases there cited. That they were wickedly done we cite the highest authority. Matthew 19:6; Mark 10:9. (2) Appellants' seventh contention is an objection to instruction number four, given for plaintiff by the trial court. The objection here is the same as to instruction number three, and is just as unreasonable. An instruction similar to this was also approved by the Supreme Court in the cases of Modisett v. McPike, 74 Mo. 636; Hartpence v. Rogers, 143 Mo. 623. (3) The question of the amount of verdict is peculiarly one for the jury, and the appellate court will not interfere with it on the ground of excessiveness, unless it clearly appears that such verdict was the result of improper motives or conduct on the part of the jury. Hanlon v. Railroad, 104 Mo. 381; Voegeli v. Marble and Granite Co., 56 Mo. App. 678; Lalor v. McDonald, 44 Mo. App. 439; State ex rel. v. Gage, 52 Mo. App. 464; Gurley v. Railroad, 120 Mo. 211; Nichols v. Nichols, 147 Mo. 387.

BROADDUS, J.—This is a suit by the plaintiff against the defendants for alienating the affections and depriving her of the assistance and society of her husband, John Rainey Love.

The facts disclosed were, that on the 13th day of April, 1900, the plaintiff and said John Rainey Love were married in the county of Maries, Missouri, and that they cohabited as husband and wife for a short time, when he abandoned the plaintiff and left the State. The evidence tended to show that the marriage was compulsory upon the husband. At the time of the marriage the plaintiff was about seventeen and the husband about nineteen years of age. It was shown

that the former lived with her mother, a widow woman, and that the latter lived with his parents, the defendants herein. It is also to be inferred from the evidence that plaintiff's relatives were laboring under the belief that she had been seduced by young Love; and that evidently acting under such belief, W. E. Heady, and another brother of plaintiff, went to defendants' home and made a charge to that effect to John E. Love, in the presence of the son, John Rainey Love, and demanded that the latter marry their sister; that defendant refused to give his consent to such marriage, whereupon said Heady declared that if something was not done at once he would have the son arrested immediately. However, it appears that in the afternoon of the same day, young Love, in company with the said Heady, obtained a license for the marriage by means of an order alleged to have been signed by his father authorizing the issuance of the same, and that later on in the evening said John Rainey Love and the plaintiff herein were married and cohabited together as man and wife until the following morning, when the former returned to the home of his parents. It is claimed by defendants that said written order purporting to be signed by John E. Love and by means of which said marriage license was secured, was a fictitious or bogus order. The plaintiff testified that after the night of the marriage her husband visited her about seven times; and that he would come in the evening and stay with her until about three o'clock the next morning when he would go home to his parents in order to prevent them from having knowledge that he was staying with her; but that, finally, the husband, on the 9th day of July, 1900, left the State and wholly abandoned plaintiff. She also testified that her husband was kind and affectionate to her after their marriage; and that after his disappearance a child was born to her, of which he was the father. Also, that after her husband had abandoned her she met defendant John E. Love on the highway and spoke to him, calling him "Mr.

Love," when he said to her: "Well, you and Rainey is married, are you?" to which she answered: "Yes, sir," whereupon he said: "Well, I sent Rainey off; he shan't live with you." And it was further shown by a witness in the case that shortly prior to the husband's departure from the country he had heard the defendant, Cynthia A. Love, say to her son, John Rainey Love, that she would give him $1,500 if he would leave.

On the trial the plaintiff, over the objections of the defendants, was permitted to prove that the latter were opposed to the marriage.

The defendants offered to prove a conversation had with the said son soon after the marriage in which he said: "He was compelled to marry plaintiff on account of threats made against him by her brothers; that they threatened to kill him, and that was the reason he married her." The court upon objection of plaintiff excluded the evidence.

When John E. Love was testifying the plaintiff, against defendants' objections, was allowed to question him as to his financial condition. This is assigned by appellant as error, as was the refusal of the court to permit defendants to read an entire letter of witness Heady to appellant John E. Love, the part omitted being the postscript which was as follows: "You can get out of this by giving me five hundred dollars or I will fill you with lead." Appellants also allege error in the giving and refusing of instructions by the trial court, the admission and rejection of testimony, that the verdict is excessive, and other errors for which they ask a reversal of the case, including the assignment, urged with much persistence, that under the testimony the plaintiff was not entitled to recover.

We believe that under the law there was ample evidence to support the finding of the jury. We will not undertake to answer defendants' contention as to the credibility of the evidence, nor their assumption that on the facts the verdict is not supported by the testimony.

It is sufficient to say that if plaintiff's evidence is to be believed—and her credibility was not assailed—the defendant John E. Love was instrumental in inducing the husband to abandon his wife. And if the testimony of another unimpeached witness is true, the defendant wife was also instrumental in inducing her son to leave plaintiff and the country. And notwithstanding the husband had seduced plaintiff and married her reluctantly, yet if it was true that after the marriage he was kind and affectionate to his wife, the acts of the defendants in alienating his affections and causing him to separate from her was not only a moral but a legal wrong. And because they had the right as parents to object to the marriage of their son to the plaintiff, did not justify them after said marriage had been consummated in seeking, without cause, to disrupt the marriage tie. The plaintiff's deplorable situation caused by the son's act should have appealed to their better natures and impelled them to have offered shelter and protection to the victim.

Where the parents have wrongfully induced and caused their son to abandon his wife, she has a right of action against them for injuries. Nichols v. Nichols, 147 Mo. 387. "A husband may maintain an action for enticing away his wife, or inducing her to live apart from him, and this, whether the wrongdoer be the father of the wife or any other person. But merely allowing the wife to come and remain in his home, by a stranger, and much less, her father, from good motives, will not give the husband a right of action." Modisett v. McPike, 74 Mo. 636; Bennett v. Smith, 21 Barb. 439. The law is correctly stated in Hodgkinson v. Hodgkinson, 43 Neb. 269, as follows: "We concede that in cases of this sort there is a distinction between the liability of parents and that of strangers, but the distinction is only in what will justify their interference. Parents may often be justified in interfering in the domestic affairs of their children, where strangers would not;

but even parents can not go so far as to break up a family without just cause or excuse, and it is not for the plaintiff to prove that no such cause existed, but it is for the defendants to prove that such cause did exist."

Defendants object to instructions numbers one, three, four and five given for the plaintiff. It seems to us that all said instructions except number four are free from criticism and that they embody the law couched in appropriate language expressive of the foregoing views of this court. And because they fail to require the jury to find that the acts of defendants were wrongful can make no difference if they find such acts were intentional. If one intentionally entices the husband to separate from the wife the law implies a wrong. The instructions amounted to a declaration by the court that the intentionally doing of the act charged is in law a wrongful act. To separate man and wife is in itself a wrongful and unlawful act, the doing of which intentionally, is wrongful and unlawful.

Instruction number four directs the jury that if they find that the defendants' acts were wanton and malicious they might assess against defendants punitive damages. And whether the evidence showed that defendants acted wantonly or maliciously is immaterial, for the jury in effect found that they did not, refusing to assess such punitive damages; which left defendants no cause for complaint on account of said instruction.

It is also claimed that the judgment being a joint judgment against both defendants and no joint cause of action alleged, it can not stand. It is true that the petition is defective in that respect, but it was an apparent misjoinder and the defendants should have taken advantage of it by demurrer; and having failed to do so, it was too late after trial and judgment to make objection for that cause. See section 672, Revised Statutes 1899, which provides that no judgment shall be reversed "for the want of any allegation or averment,

on account of which omission a demurrer could have been sustained.''

Defendants claim that they were prejudiced by the action of the court in excluding from the jury the postscript of the letter of witness Heady addressed to defendant John E. Love, and hereinbefore quoted. As the witness denied that he wrote the postscript, which could have been written by some one else, the burden was upon the defendants to show that it was the handwriting of the witness, which he failed to do; therefore, the court properly excluded it from the consideration of the jury. In any event, as the object of its introduction was to show the ill will of said witness to the defendant, he could not have been injured by the action of the court in that respect as that fact had already been abundantly established.

And it was not error in the court refusing defendants' offer to prove that the son stated to the father that he was compelled to marry plaintiff by reason of the threats of her brothers to kill him if he did not do so. It is well-settled law that hearsay evidence, as a rule, is not admissible. Dunn v. Altman, 50 Mo. App. 231; Fougue v. Burgess, 71 Mo. 389.

The further contention that the court erred in permitting plaintiff to prove the financial condition of the defendants is also without merit. Beck v. Dowell, 111 Mo. 506; Hartpence v. Rogers, 143 Mo. 623. And it is further insisted that it was error to permit witness Heady to testify to the declarations of defendant John E. Love, wherein he refused to consent to his son marrying plaintiff. There is no denying that he had the right, as the father, to refuse his assent to said marriage, and he incurred no liability in so doing; and the fact that he did so was not a matter for the consideration of the jury. Yet, he could not have been prejudiced thereby, as all the circumstances and the evidence in the case went to show such a state of facts. And if we un-

derstand the record properly it was practically admitted that defendants were opposed to the marriage.

Lastly, the defendants contend that the verdict of the jury was excessive and the result of prejudice and passion. In Morgan v. Ross, 74 Mo. 318, the court used the following language: ''The amount of the damages in such cases is considered a question peculiarly within the province of the jury, and as one which can not from the very nature of things be estimated or computed upon any mere compensative or pecuniary basis; and courts certainly would not interfere with a verdict in this, or in kindred cases, where there is no scale whereby the damages can be graduated with certainty, unless proof be introduced showing flagrant abuse of those powers which the law had confided to the intelligence and good sense of the jury.'' See Hartpence v. Rogers, 143 Mo. 623. We will not undertake to measure the depths of plaintiff's grief and humiliation nor the weight of the burden which must rest so heavily upon her in her abandonment and isolation from society—that was the business of the jury. Then, too, this matter was brought to the attention of the learned judge who tried the case below and who was in a position to much better pass upon the plaintiff's measure of damages than is this court, and he did not think the verdict excessive. To his judgment in that respect it is our opinion much weight should be given.

Finding no material error in the case the cause is affirmed. All concur.