[No. 13699. Department Two. May 8, 1917.]

## CAROLA B. JONES, *Respondent*, v. T. E. JONES, *Appellant*.[1]

HUSBAND AND WIFE—ALIENATION OF AFFECTIONS—EVIDENCE—MALICE—SUFFICIENCY. In an action against her father-in-law for alienation of her husband's affections, malice may be inferred from the conduct of the defendant; and the evidence of malice is sufficient where it appears that the defendant conducted all the negotiations leading to the marriage to avoid a criminal prosecution, after which there was an immediate desertion of the plaintiff, to whom the husband had been very attentive and affectionate until the interposition of the defendant in the matter.

SAME—ALIENATION OF AFFECTIONS—EVIDENCE—DECLARATIONS OF HUSBAND. In such an action, evidence is admissible of a declaration by the husband that his father had forbidden him to talk with the plaintiff.

SAME. In such an action, declarations of the husband purporting to show want of affection for the plaintiff are inadmissible, as being an evasion of Rem. Code, § 1214, providing that one spouse shall not be examined for or against the other without such other's consent; nor, under such statute, could the husband testify as to his disposition toward plaintiff prior to the marriage.

SAME—ALIENATION OF AFFECTIONS—DAMAGES—EXCESSIVE VERDICT. In an action against a father-in-law for alienation of a husband's affections, a verdict for $25,000, reduced by the trial court to $12,500 is not excessive, where it appears that the defendant consented to the marriage for the purpose of avoiding a criminal prosecution against his son, with the ultimate idea of securing a divorce, and that he was the active agency in keeping the spouses apart.

CONTINUANCE—NEWLY DISCOVERED EVIDENCE—DISCRETION. It is discretionary to refuse to grant a continuance at the close of the trial for the purpose of presenting further evidence.

Appeal from a judgment of the superior court for King county, Frater, J., entered May 13, 1916, upon the verdict of a jury rendered in favor of the plaintiff, in an action for alienation of affections. Affirmed.

*Chas. F. Munday* and *Griffin & Griffin*, for appellant.

*Halverstadt & Clarke*, for respondent.

[1]Reported in 164 Pac. 757.

Fullerton, J.—The plaintiff, Carola B. Jones, brought this action against T. E. Jones, her father-in-law, to recover damages on the ground of alienation of her husband's affections. A verdict of $25,000 was returned by the jury, upon which the court ruled that he would grant a new trial unless plaintiff would submit to a reduction to the sum of $12,500. The plaintiff submitted to the reduction, and judgment was given accordingly. The defendant appeals.

The principal error assigned by the appellant is the denial of his challenge to the sufficiency of the evidence, which was raised by motions for nonsuit, for a directed verdict, and for judgment *non obstante veredicto*. The appellant contends that there was an entire absence of any testimony showing, or tending to show, malice on his part, and that, in the absence of any proof of malice, the case should have been taken from the jury and judgment given for appellant. The evidence on the part of the respondent tended to show that Tom Jones, the son of appellant, had been attentive to the respondent for a period of over a year prior to the marriage, during which time he displayed towards her the utmost affection, and exhibited the extremest jealousy of the attentions of other young men to her. He was a constant visitor in her home, taking her frequently for auto rides and to the theater. The respondent at this period was sixteen years of age, and Tom Jones was twenty-one. After they had been thus intimate for about a year, respondent discovered, in August, 1914, that she was pregnant. Tom Jones was apparently ignorant of this state of affairs until the father of respondent, in October, 1914, called him to the house and informed him of her condition. The respondent was hysterical at the time, and Tom Jones put his arm around her and told her not to worry and everything would come out all right, saying: "The only right thing to do was to get married, but he had to speak to his father first, because he was in no position to support a wife;" then kissed her goodbye and left. He went home and informed his father, who testified that he

told his son that, if she was a decent girl and he loved her, he must marry her and take care of her. There is no further evidence of what passed between father and son at the time, but the fact is that the son never returned to the respondent to make good his promise. The respondent later began to threaten a criminal prosecution, and the appellant undertook complete charge of all negotiations, the son remaining passive. The attorney for respondent was insisting that marriage was the only alternative to prosecution. A meeting was arranged between this attorney and those representing the appellant, in which the appellant agreed to a marriage between his son and respondent. The marriage occurred about a week later in Everett; the appellant with his son, and the respondent with her sister and father, composing the party present at the ceremony in the courthouse there.

On their return from the marriage ceremony, respondent and her family left the interurban car at Fremont, appellant and his son going on down town. It was in evidence that the appellant promised to call at the home of respondent the next day. He did not go there, however, until about a week later, and then in response to an insistent summons. On this visit appellant asked respondent about her condition, and suggested that she go to some other city until the baby was born. She declined, and then he told her to go to the hospital in Seattle and have the best of care and he would pay all of her bills. She testified that he asked her when she would release his son, and she told him that, with a small baby on her hands, she would not release him. "Well, he says, 'You can give the baby to Tom, and you can always get married again.' Then he got kind of mad and he told me he absolutely refused Tom to live with me. He said he had another girl picked out for Tom and had other plans." This testimony, though denied by appellant, is substantiated by that of the sister of respondent, who was present at the meeting between the parties. The appellant left this meeting in an angry frame of mind, and subsequently declined to pay the hospital bills of respondent. Ap-

pellant's son made no effort to visit or cohabit with his wife. She met him but once after the marriage. She testified: "My sister called Tom up and asked him to meet her and she went and met him first, and then about five minutes afterwards I met him, because he refused to meet me at all; and he was awfully mad because I met him that way, and he said he couldn't talk to me, that his father had forbidden him to say anything; that he had put it in the hands of his attorneys, and I would have to talk to them. He said his father had forbidden him to say anything to me." A child was born to respondent in January, 1915. The husband continued to live with his father until July, 1915, when he left his home to take a position in Alaska, without calling upon or communicating with the respondent. The only money he ever contributed to the support of his wife and child was the sum of twenty dollars.

We think the motions challenging the sufficiency of the evidence were properly denied by the court, as there was sufficient evidence to warrant the submission of the case to the jury. These objections were based chiefly on the assumption that there was no proof of malice on the part of appellant. It is true the appellant testified there was none, but we think there were matters in evidence from which malice might be inferred. Malice, like other mental processes, is as well shown by conduct as it is by the testimony of the person whose condition of mind is the subject of inquiry.

An objection is made to the declaration of the son to the effect that his father had forbidden him to talk to respondent, that their matter had been put in the hands of attorneys, and she would have to talk to them. We do not find that timely objection was made to this; but conceding the fact otherwise, such evidence was admissible under the authorities. In *Nevins v. Nevins*, 68 Kan. 410, 75 Pac. 492, it is said:

"The declarations of the young husband, although not a party to the suit, were admissible to show the effect that his father's wrongful interference and misrepresentations had upon his mind. It was competent not only to show the active

and persistent efforts of the defendant to alienate his son from Ella, but it was also both proper and necessary to show the effect of such efforts upon the son. For this purpose the testimony was competent."

In *Williams v. Williams*, 20 Colo. 51, 37 Pac. 614, it is said:

"Under the issue to be determined, and in connection with the testimony introduced, it was, in our opinion, proper to admit in evidence the declarations of Edward, for the purpose of showing what influenced his conduct in separating from his wife. It is true his mere declarations were not admissible to show what his mother's conduct was, nor was it, *of itself alone*, material how bad his mother's conduct was towards plaintiff; for, no matter how bad her conduct was, she could not properly be held liable in this action unless the effect of her conduct was such as to cause Edward to become estranged from and desert his wife. From the record it clearly appears that the trial court was careful to place the declarations of the husband upon this ground. Thus limited, it was not error to admit proof of his declarations."

Contention is made by appellant that it was error to exclude the testimony of the husband purporting to show want of affection for his wife, and also the testimony of other witnesses as to declarations made by the husband prior to any knowledge on appellant's part of the relations between his son and respondent, for the purpose of establishing that the husband's feelings and conduct toward respondent were not influenced by his father. Under Rem. Code, § 1214, providing that one spouse shall not be examined for or against the other without such other's consent, we have held in *Stanley v. Stanley*, 27 Wash. 570, 68 Pac. 187, a suit by the wife against her husband's parents for alienating the affections of the husband, that the husband was not competent to testify over the objection of the wife. If the husband was incompetent to testify as to any matter, clearly the statute could not be evaded by admitting in evidence declarations made by him to third parties. While the state of mind of the husband in this case was a material fact to be considered in determining whether there had been an alienation of the husband brought

about by his father, it was a matter for proof by competent evidence, by evidence which would not fall within the inhibition of our statute. It was sought further to prove by the husband's testimony what his disposition toward respondent was at a period preceding the existence of the marriage relation. But his competency as a witness would depend upon his relationship at the time of the trial, and he would be precluded from testifying against his wife as to occurrences transpiring before marriage. *Sands v. David Bradley & Co.*, 36 Okl. 649, 129 Pac. 732, 45 L. R. A. (N. S.) 396.

Appellant further contends that the verdict of the jury was so grossly excessive as to show passion and prejudice on their part, and that a new trial should be awarded in consequence. The verdict, as we have seen, was for $25,000, and was reduced by the trial judge to $12,500. The latter figure still seems large, but there is evidence justifying an award, and there is no showing, other than the size of the verdict, that the jury was influenced by prejudice. The jury was warranted in finding from the evidence that the appellant consented to the marriage for the purpose of avoiding a criminal prosecution against his son and with the ultimate idea of securing a divorce of the parties, and that he was the active agency in keeping his son away from his wife. Public policy has regard for the maintenance of the marriage relation, and appellant's acts and conduct were in opposition to that policy. Under the circumstances, we are loath to disturb the verdict of the jury as modified by the trial court.

Errors are assigned relating to the admission and exclusion of evidence other than those above indicated, but we find none of them material. Objections raised as to several of the instructions given are not well taken, even if the paragraphs complained of be withdrawn from their setting as a part of the charge given. The instructions as a whole were proper statements of the law and presented the appellant's defense to the jury in the clearest and fairest way possible.

Error is assigned upon the refusal of the court to grant a continuance at the close of the trial for the purpose of enabling the appellant to show that respondent had tried to place the paternity of her child upon another man prior to her claim on that score against the son of appellant. The court refused to grant the continuance at that stage of the proceedings, suggesting to appellant that the matter might be presented upon a motion for a new trial. The matter was presented upon the motion for new trial on the ground of newly discovered evidence, and affidavits pro and con were submitted, upon which the court ruled the showing made was insufficient. It was within the discretion of the trial court to grant or refuse a continuance, and we do not think there is any showing of abuse on his part. An examination of the affidavits clearly indicates their inadequacy to affect the issue of the trial.

The judgment is affirmed.

ELLIS, C. J., PARKER, and HOLCOMB, JJ., concur.