[No. 19215.   Department Two.   August 26, 1925.]

EDWARD THOMAS, *Appellant,* v. R. R. LANG *et al.,*
*Respondents.*[1]

HUSBAND AND WIFE (120)—ALIENATION OF AFFECTIONS—EVIDENCE
OF MALICE—SUFFICIENCY.  In an action against a wife's parents for
alienation of her affections, malice is sufficiently proven to require
submission of the case to the jury, where it appears that the parents
instigated an unjustifiable action for a divorce by the wife, the
husband's conduct was so exemplary as to negative any justification
for interference, and the parents gave evidence of unfriendliness
and kept the parties apart when but for their influence the wife
was ready to return.

Appeal from a judgment of the superior court for
Spokane county, Lindsley, J., entered December 17,
1924, in favor of the defendant, granting a nonsuit, in
an action for alienation of affections, after a trial to
a jury.  Reversed.

*McCarthy, Edge & Lantz,* for appellant.

*A. G. Gray,* for respondents.

MACKINTOSH, J.—The appellant and the daughter of
the respondents were married in May, 1920, the ap-
pellant at that time being thirty-two years of age and
for three years having been a railroad brakeman, in
which employment he still was at the commencement
of this action.  Soon after the marriage, he purchased
a home and an automobile and habitually turned over
his wages to his wife, who drew checks from the bank
for household and personal expenses.  His testimony,
and that of neighbors and friends and the nurse who
attended the wife upon the birth of the second child,
showed that he was an exceptionally affectionate and
considerate husband.  In 1921, the first child was born,
and in May, 1924, the second.  The day before the last

[1]Reported in 238 Pac. 626.

birth, the wife, at the request of her mother, was taken to the respondents' home, about nine miles distant from the appellant's residence, a nurse was provided for the wife and there the child was born. The appellant, having obtained a leave of absence from his work, was with his wife at the time. Within a few days afterwards, he had extensive repairs made on his home in preparation for his wife's return. Returning then to his work, he called to see his wife and telephoned to her frequently. The testimony shows that the relations between the appellant and the respondents, up to the birth of the second child, had been friendly and satisfactory, that they visited back and forth, that there was no evidence of any coolness on the part of either.

The wife remained at the respondents' home while she was having some dental work done in Spokane, which was a little distance from the home of each of the parties, this arrangement being for the purpose of allowing her mother to take care of the children during her absence. About July 10, the appellant, returning one morning from his work, saw an item in the Spokane paper to the effect that his wife had started a divorce action against him. This, according to his testimony, was the first intimation he ever had that his wife was not to return home or that in any way she had lost any affection for him. Upon reading this newspaper item, the appellant got into communication with the respondents' home by telephone, his wife's mother answering the phone, when this conversation took place:

"A. I asked her what they was trying to do out there. She says, 'You have been cruel enough to Myrtle.' That is my wife. I says, 'I have not.' I says, 'You folks are mixing this trouble and nobody else, and you are just trying to get Myrtle and the babies away from me, that is all you are trying to do.' She says, 'We have got her and we are going to keep her now.' She says, 'If

you come out here the sheriff is right here waiting for you.' Q. Did you have any conversation with your wife at that time? A. Not just then. They wouldn't let her come to the phone. I wanted her to come and she wouldn't. Q. You wanted who? I wanted my wife and they wouldn't even call her to the phone. Q. Did you ask her about having Myrtle come to the phone? A. She said she wouldn't let her come to the phone, and they wouldn't let her at that time."

A little later he called up again and was having a conversation with his wife when her father interrupted the conversation and this occurred:

"A. Myrtle and I was talking and she said her folks was helping her get a divorce and she was going through with it. We was talking back and forth there and Mr. Lang, he come to the phone. Q. By the way, in this conversation with Myrtle state whether or not you were discussing anything about a reconciliation, or meeting her to talk matters over further with her. A. Yes, sir; she was willing to come back. Q. What did she say? You have got to tell as near as you can the substance of what you said and what she said. A. I told her that I would meet her any place downtown, and we would sell the house and lot and get in the car and get out of the country, and get away from everybody here, until Mr. Lang came to the phone. He come to the phone and called me a dirty son-of-a-bitch and a snake, and he told me if I ever come out there it would be the last tracks I ever made any place. Q. State whether or not your conversation with Myrtle was interrupted or broken off. A. Yes, sir, it was. Myrtle and I was talking and all at once Mr. Lang took over the phone and called me all kinds of dirty names, and he told me if I ever come out there to see Myrtle or the children it would be the last tracks I ever made. Q. State whether or not he said in that conversation that they were going to keep her out there, or anything of that sort. A. Yes, sir, he did. He said, 'You misused my daughter for the last four years, and I am going to keep her here.' "

In the brief of the appellant, it is stated that the divorce action resulted in a decree denying the wife a divorce and this statement is not denied by the respondents' brief, although we find nothing in the record itself regarding the outcome of that action.

The appellant then began this suit against his wife's parents for their wrong in alienating her affections. At the conclusion of the appellant's case, the motion of respondents for nonsuit was granted and judgment in their favor was entered, from which this appeal is taken.

As was said in Stanley v. Stanley, 27 Wash. 570, 68 Pac. 187, there is a great difference between an action by one spouse against the parents of the other for alienation, and one against a stranger who has disturbed the marital relation. In the former class of cases, the parents, in order to be held in damages, must have been moved by malice and the rule in such cases is, as stated by Cooley on Torts, Vol. 1 (3rd ed.), 468, "a clear case of want of justification may be justly required to be shown before they should be held responsible." In Cramer v. Cramer, 106 Wash. 681, 180 Pac. 915, we said, "the burden of proof is heavier in this kind of action than some other kinds of civil actions."

The question, therefore, is whether there is enough evidence in this case showing malice on the part of the respondents. We find a situation where, without any apparent reason, an unjustifiable divorce action is started by a wife who at all times had manifested affection for her husband, who had made no complaint, who had had happy surroundings, who had been amply provided for, and who, ten days before the divorce action was started, had told her friends that she intended returning to her husband and made a satisfactory excuse for not having already returned there. We find that this situation is testified to by disinter-

ested witnesses—neighbors, friends, and by a trained nurse who, up to the time of her employment by the appellant and his wife, was unknown to both of them. We have a case where there is no intimation of any quarrelling having taken place between any of the parties interested, except that the testimony showed that the respondents, soon after the birth of this second child, gave evidence of unfriendliness toward the appellant, that they then treated him with coolness— sometimes not speaking to him nor recognizing him when he called at their home to see his wife; and the further testimony, already noticed, showing that state of unfriendly feeling of the respondents towards the appellant. If these things are true, and they must be so taken for the purpose of the determination of the matter as it now stands, it would seem clear that no one could be justified, whether parents or strangers, in so acting as to deprive the appellant of the affections of his wife.

Courts which have generally recognized, in actions against parents of either spouse, that malice must be proved, also hold that malice need not be proved by direct and positive means, but may be inferred from wrongful acts and conduct.

The court, in *Stilwell v. Stilwell,* 186 Iowa 177, 172 N. W. 177, says:

"An alienation suit can be established by circumstantial evidence, by facts that do not make the whole case, aided by just inferences from those facts in combination with others." [Syllabus]

The case of *Clark v. Clark,* 187 Ind. 25, 118 N. E. 123, holds that "malice may be inferred from wrongful and unjustifiable acts and conduct."

In *Fronk v. Fronk,* 159 Mo. App. 543, 141 S. W. 692, it is laid down that:

". . . no such inference of malice will flow from the mere fact of parental interference in the marital relations of his child. In such cases, the proof of the plaintiff must go further and show that the interference of the parent was without just cause or excuse."

See, also, *Porter v. Porter*, 258 S. W. (Mo. App.) 76.

In the case before us, the testimony shows that the appellant's conduct was so exemplary as to negative any justification of interference.

In *Wagner v. Wagner*, 204 S. W. (Mo.) 390, the syllabus reads:

"Every reasonable inference which a jury might draw from the facts and circumstances in the case must be allowed in plaintiff's behalf on demurrer to her evidence."

See, also, *Love v. Love*, 98 Mo. App. 562, 73 S. W. 255. In *Francis v. Outlaw*, 127 Md. 315, 96 Atl. 517, the court, considering the sufficiency of the plaintiff's proof of malice, held that, upon a consideration of all the testimony, if it was enough to induce an ordinarily intelligent person to conclude that the defendants had acted maliciously, the question should be submitted to the jury. In *Williams v. Williams*, 20 Colo. 51, 37 Pac. 614, it was said that malice might be implied in cases of this kind, malice being defined as a deliberate disposition to do a wrongful act injurious to another. In *Stilwell v. Stilwell, supra,* it was held that parents were within their rights in giving their children advice which might be indiscreet, unless that advice was prompted by malice, and that an alienation action can be established by circumstantial evidence, by facts that do not make the whole case, "aided by just inferences from those facts in combination with others." In *Girardin v. Girardin,* 126 Atl. (N. J.) 634, the evidence to establish malice was, as in the case at bar, meagre, but the court held that it was sufficient from which a jury

would be justified in determining that the defendants had not acted in parental affection, but from malice. In *Surbeck v. Surbeck*, 208 S. W. (Mo.) 645, it was held that, where there is any substantial evidence, direct or inferred, tending to show malice, the case should be submitted to the jury, which is entitled to draw reasonable inferences from the evidence, and reason from cause to effect and from effect to cause and to form its own conclusion. The rule is stated in 30 C. J. 1122, as follows:

"While in some cases it has been held that malice is essential, especially in actions against the parents of the alienated spouse, the general rule is that express malice need not be proved, intentional, unjustifiable, and wrongful alienation being sufficient from which to imply the requisite malice."

As indicated in the foregoing quotation, that, while some courts have held that express malice is essential in actions against the parents of the alienated spouse, the better rule is that malice need only be shown to the extent that its existence is inferred.

It would appear, therefore, that in this case, although the direct and positive proof of malice is lacking, there is sufficient established by the appellant's evidence to put the respondents upon their proof and that the trial court was in error in granting the motion for a nonsuit.

In the early case of *Young v. Young*, 8 Wash. 81, 35 Pac. 592, where the plaintiff's action was nonsuited, the testimony as set out in the opinion shows neither malice nor anything from which malice might properly be inferred by the jury. In *Stanley v. Stanley*, 27 Wash. 570, 68 Pac. 187, where the action was dismissed as to the father and a new trial granted as to the mother, the conduct of the mother was sufficient in the court's opinion to take the case to the jury. This evidence, as shown by the opinion, was no stronger than

that in the present case against the respondents. This is, also, true of *Jones v. Jones,* 96 Wash. 172, 164 Pac. 757, where a like result was obtained. As we read it, there is nothing contrary to this holding in *Cramer v. Cramer,* 106 Wash. 681, 180 Pac. 915; that case recognizing that the conduct of the parents is presumed, in the absence of any other proof, to be in good faith; the burden is therefore on the plaintiff who assails such conduct, but that the malice which is necessary to be established as overcoming that presumption need not be proved by direct evidence, but may be established by inference from testimony showing that the parents' conduct was wrongful and unjustifiable.

The judgment of the trial court is reversed, and the action remanded.

TOLMAN, C. J., FULLERTON, HOLCOMB, and MITCHELL, JJ., concur.