ERASTUS E. WHITE AND ANNAH H. WHITE v. HUGH B. ROSS.

*Inducing wife to leave husband—Letters between husband and wife to show affection.*

A father and mother were sued by their son-in-law for enticing their daughter from him and alienating her affections.   The evidence showed that the marriage of the young people was clandestine; that the antecedents of the man had not been reputable; that at the time of the marriage it was agreed that it should be kept secret, and the wife remain with her parents for a year, but the husband soon disclosed it; that the parents were greatly agitated and excited when they were made acquainted with the facts, and the father threatened violence if the daughter was taken away at once, but said that, after a week's delay, if she saw fit to go, no obstacle should be interposed; that before the week expired she expressed dislike and repugnance to the husband, and determined to stay with her parents; and there was no evidence of compulsion or solicitation, or of utterances

by the parents which the conduct of the son-in-law did not merit. *Held,* that upon this evidence the court might well instruct the jury that there was no case for their consideration.

The plaintiff, without having given evidence tending to show that the parents had improperly interfered with his family concerns, was allowed, under objection, to put in evidence his wife's letters to show her affection for him. *Held,* that until there was evidence of misconduct on the part of the parents the state of the daughter's affections was immaterial; that the objection to the letters was, therefore, valid at the time, and as it was not obviated by any subsequent showing against the parents, the judgment rendered in favor of the plaintiff should be reversed upon that objection.

Error to Shiawassee.    Submitted October 18.    Decided October 26.

CASE.    Defendant brings error.    Reversed.

*E. R. Hutchins* and *Crocker & Hutchins* for plaintiff in error.    Letters from a wife to her husband are confidential communications which, on grounds of public policy, cannot be put in evidence in a proceeding by the husband against a third party for alienating her affections: 1 Greenl. Ev. §§ 254, 334; Whart. Ev. §§ 427, 433; 1 Best's Ev. 278 n. 1; 2 id. § 586; Abbott's Trial Ev. 165; *Baldwin v. Parker* 99 Mass. 79; *Raynes v. Bennett* 114 Mass. 424; *Dexter v. Booth* 2 Allen 559; *Drew v. Tarbell* 117 Mass. 90; *Bliss v. Franklin* 13 Allen 244; *Handlong v. Barnes* 1 Vroom 69; *Jackson v. Miller* 1 Dutch. 90; *Stein v. Bowman* 13 Pet. 209; the rule of common law protecting the confidence of communications between husband and wife is not ordinarily affected by statutes which permit them to testify for or against each other: *Kelly v. Drew* 12 Allen 109; *Lucas v. Brooks* 18 Wal. 453; *Packard v. Reynolds* 100 Mass. 153; *Baxter v. Railroad Company* 102 Mass. 385; see also *Morrissey v. People* 11 Mich. 341; *Glover v. Alcott* id. 486; *Knowles v. People* 15 Mich. 413; *Herrick v. Odell* 29 Mich. 49; *Jenne v. Marble* 37 Mich. 322; *People v. Marble* 38 Mich. 122; *Hubbell v. Grant* 39 Mich. 643; if parents act from motives of affection to a daughter in inducing her to leave her husband, and for her relief and

protection and not from malice to the husband, they are not liable to him: Schouler's Dom. Rel. 57, 58; *Hutcheson v. Peck* 5 Johns. 196; *Bennett v. Smith* 21 Barb. 439; *Barnes v. Allen* 1 Keyes 390; *Smith v. Lyke* 20 N. Y. Sup. Ct. 204; *Payne v. Williams* 4 Baxt. (Tenn.) 583.

*Jerome W. Turner* and *Edwin F. Conely* for defendant in error.   Letters from a wife to her husband are admissible as evidence of her affection for him: Cooley on Torts 225 n. 2; *Willis v. Bernard* 8 Bing. 376; *Gilchrist v. Bale* 8 Watts 355; *Palmer v. Crook* 7 Gray 418.

COOLEY, J.   Ross brought suit against Erastus E. White and Annah, his wife, for enticing, persuading and procuring his wife Lulu to abandon and refuse to live with him, and for alienating her affections from him.   The following summary of the facts is sufficient to an understanding of the legal questions:

White and his wife are the father and mother of Ross' wife.   They reside in Owosso where they are and have been for many years reputable members of the Baptist church. Ross, some eight or nine years ago, came to live in the neighborhood.   His previous life had not been reputable. He began drinking intoxicating drinks when fourteen years of age, and his own account of himself from that time shows him to have been dissolute, often engaged in broils, and sometimes a visitant of disreputable places.   The first time Mrs. White ever saw him was when he was being led through the streets in an intoxicated condition.   White and his brother were engaged in business as manufacturers, and Ross obtained employment with them, and after a while the brother, with some hesitation, received him as a boarder. Ross saw Lulu occasionally, but there was no intimacy between them, and apparently very little acquaintance.   He testifies that he once asked White if he might take her to a public entertainment to be given in one of the churches, and that White replied in substance that she could decide for herself; but she did not go with him.   Meantime he proposed to reform and join the church, but as he says,

" What bothered me was, I used to drink." Between the day when he proposed to be baptized and the time when the ceremony was to be performed he became intoxicated, and for this reason, as he says, abstained from presenting himself except as a spectator. Subsequently, however, his professions of repentance were such that he was received into the church. Not long after this Lulu obtained permission to visit a school friend at Monroe, where she was expected to remain some little time, and when she was gone, Ross asked and obtained a short vacation, ostensibly to visit Hastings, where he had once resided. As the Whites knew that his life at Hastings had been disreputable, it seemed to him a proper thing to request the prayers of Mrs. White that he be saved from temptation, and he made the request. The road he took to Hastings, however, led by way of Monroe, where he stayed several days, making suit to Lulu and pressing her for an immediate marriage. She consented after a time, on condition that the marriage should be kept a secret, and that she should return to live with her parents for a year. The marriage took place, and he then went on to Hastings. She accompanied him as far as Kalamazoo, where she made another visit. He returned to Owosso alone, and called upon Mrs. White to let her know that her prayers had been effectual.

When Lulu returned to her father's, Ross, instead of concealing the marriage further, announced it to the parents and produced the certificate. It was a great shock to both, and the father would not believe it until the daughter had confessed the truth. What took place then is differently related by different witnesses. There is some evidence that White, when Ross proposed to have Lulu immediately go away with him, said in a great passion that he would shoot them both if she did, but the evidence is very clear that before the interview was over he said in substance that if she remained with her parents a week and after that time decided to go with her husband, the doors should be open to her and no obstacle interposed. With this understanding she remained. The evidence is abundant that before the

week was up Lulu had determined not to go with Ross, avowed that she had been deceived by him, and expressed the most decided repugnance to him.

There was no evidence whatever in the case that the Whites exercised any compulsion to prevent their daughter going with Ross, or that her refusal to live with him was not voluntary and decided. The evidence on which the plaintiff relied for a recovery consisted in the account of the interview at the time the marriage was disclosed, and subsequent statements by White respecting the worthlessness of Ross' character. One witness also testified that the parents on one occasion stated that they thought the daughter ought to have married a man in some different employment. As neither of the Whites made use of any language concerning Ross which his life and conduct had not invited, and as neither compulsion nor solicitation was shown, it is to be presumed the court would have instructed the jury there was no case for their consideration had the counsel requested it. *Hutcheson v. Peck* 5 Johns. 196; *Bennett v. Smith* 21 Barb. 439; *Payne v. Williams* 4 Baxt. 583. It would be strange indeed if parents, under peril of legal consequences, must keep silence under such circumstances, or must clothe in terms of respect their expressions of outraged feeling, when even strangers would be excused for speaking with freedom.

If we reviewed cases on the facts, there would be no difficulty in dealing with this; but under the law we can examine the legal rulings only. But the case is one in which the plaintiff should be held to strict rules; and we think an error was committed which was almost of necessity injurious. Ross did not see fit to put his wife on the stand as a witness; and there is abundant reason to believe that, if he had done so, her evidence would have been disastrous. But without first having proved misconduct by the defendants he was allowed under objection to prove his wife's affection for him by her letters written immediately before and immediately after the marriage. In that manner he obtained the benefit of his wife's evidence in his own favor, without

placing her in position to be cross-examined, or giving her the opportunity to testify to all the facts. This evidence was very well calculated to withdraw the attention of the jury from the main point in controversy, and as they gave a verdict for the plaintiff, it is likely they inferred wrong conduct on the part of the defendants from no more substantial premises than were afforded by the woman's letters and her speedy change in sentiments. When the letters were received in evidence they were as to these defendants *res inter alios*, and they did not become anything different by any subsequent showing. The objection made to their admission must therefore be considered as not obviated.

In this view of the case, some other questions become immaterial, and are not noticed.

The judgment must be reversed with costs and a new trial ordered.

The other Justices concurred.