[No. 1138.   Decided January 16, 1894.]

LUCY YOUNG, *Respondent*, v. JOHN YOUNG AND MARY
YOUNG, *Appellants*.

| 8 | 81 |
|----|-----|
| 27 | 580 |

DAMAGES — DEPRIVING WIFE OF HUSBAND'S SOCIETY AND SUPPORT
— SUFFICIENCY OF EVIDENCE.

In an action for damages by a wife against her husband's father
and mother for causing her husband to abandon her and for de-
priving her of support and maintenance, the plaintiff should be
non-suited when her evidence merely shows that she was driven
away from the house of defendants, where she and her husband had
been living with his parents, that he did not go with her, that her
mother-in-law had said that her son would not live with plaintiff
any longer, that plaintiff's husband failed to keep an appointment
to meet her, and that the mother-in-law had requested another per-
son to use influence to prevent her son from again living with
plaintiff, for the reason that if he did so his father would disinherit
him.

*Appeal from Superior Court, Clarke County.*

*N. H. Bloomfield, M. J. McMahon,* and *Miller & Stapleton,* for appellants.

*W. H. Metcalf,* and *Dell Stuart,* for respondent.

The opinion of the court was delivered by

ANDERS, J. — This action was brought by the respondent against the appellants to recover damages for causing her husband, who is a son of the appellants, to abandon her and to refuse to live with her as her husband, or to provide a home for her, and for depriving her of his society and affection, and of support and maintenance. A trial was had, resulting in a judgment for plaintiff, to reverse which the defendants have appealed to this court.

At the close of the plaintiff's evidence, the defendants moved for a non-suit, which motion was denied, and the defendants excepted. The appellants earnestly insist that this ruling was error, and we are inclined to agree with them. In our opinion the evidence was so unsubstantial that it amounted to a mere probability in favor of plaintiff's cause of action, and, therefore, in the language of the code, wholly "failed to prove a sufficient cause for the jury."

The facts disclosed by the record are briefly these: The respondent was married to Philip Young on May 4, 1892, she being at that time nineteen years old, and he twenty-four years old. Immediately after their marriage, the respondent and her husband went to reside with the appellants on their farm, about a mile distant from the home of the respondent, and remained there together until March 19, 1893, at which time she returned to the home of her parents, where she afterwards remained separate and apart from her husband, who continued thereafter, as before, to reside with the appellants.

It is claimed by the respondent that her going away was not of her own volition, but that she went because the appellants refused to permit her longer to remain at their home. It is not shown, however, that any force or violence was used or threatened against her to cause her to leave, or that she was in any way maltreated or misused by appellants while she resided at their house. But their intercourse with each other was not always pleasant and amicable. Disputes and disagreements sometimes arose for which one party was probably as much to blame as the other. On one occasion respondent took exception to some remarks concerning her father, made by one of appellant's children, and, during the controversy, Mary Young said to the respondent if she did not like the way the boys talked she could "pack up her things and get out." Respondent's husband told her to overlook this remark of his mother, which she did, and thereafter thought no more about it.

This was about Christmas time, and no further trouble occurred until the 17th of March following. On that evening there was a dance at Grange Hall, and Philip asked Lucy to accompany him there. She at first consented, but when the time came to go she told Philip she was not feeling very well and would remain at home, and he went alone. During the evening and after Philip had gone, the appellant John Young asked Lucy why she did not go to the dance and she told him she did not feel well. He then said to her she did not look sick, and had not said anything about it before, and that it was not right to treat Philip that way. She then replied that Philip had no objection and was willing that she should remain at home. The appellant Mrs. Young then remarked to Lucy that she had not done as a married woman should do in sending her husband off alone, and that it was not because she was sick at all, but because she had a stubborn head on her.

The respondent retorted, "I have not been happy since I have been in this house—I have not seen a happy day since I have been here." This statement displeased Mr. Young, and he thereupon said to respondent, "If you haven't been happy, get up and get out." When Philip came home Lucy told him what had occurred, and said she would go away the next morning. Philip "cried and took on," and said, "Stay, and it will be all right in a few days."

Respondent did not leave the next morning, however, but went down and worked around in the kitchen, and finally told Mrs. Young she would overlook what had been said and it would be all right. But Mrs. Young was not in a forgiving mood at that time and bluntly remarked to Lucy that she would overlook nothing, and that she, Lucy, could pack up and get out. But Lucy evidently did not consider this remark of Mrs. Young as an imperative command to leave the premises, for she remained at work about the house all day. After the work was all done she went over to the house of her father and mother, informed them of her troubles, and, according to her own testimony, "told them to come over Sunday and we would see what arrangements we could make, and if we did not come to any satisfactory arrangements I would come home with them."

Satisfactory arrangements not having been made on Sunday, the respondent got ready to go home with her parents, but at the request of her mother and her husband, who begged her not to go away, concluded to remain with her husband. After the respondent's father and mother had started for home, appellant Mrs. Young said to respondent, "I thought you were going." Respondent replied, "I am going to stay for Philip's sake;" whereupon Mrs. Young rejoined, "No; you will not. You have got ready to go, now go." Respondent had previously "packed up

her things," and, after telling her husband she had to go, she left the house of appellants, without further ceremony, and for aught that appears in the record, never returned or offered to return to her husband.

The above is substantially all of the evidence produced by the respondent to prove that the appellants, or either of them, compelled her to leave their house, and, if it be conceded that what was said to her by appellant Mrs. Young was sufficient to justify her leaving, still she can sustain no cause of action upon that ground alone. Appellants were under no legal obligation to provide a home either for her or her husband. And granting that they drove her away without provocation, and simply permitted but did not persuade or otherwise influence their son, her husband, to remain with them, still no action can be maintained against them therefor. While the appellants would have no right to prevent their son from following his wife wherever she might choose to go, they certainly would not be liable in an action for damages by reason of his refusing to do so, without proof that such refusal was the result of the exercise of some improper influence by them.

In this case there is no direct evidence whatever showing that respondent's husband ever refused to live with, or support, her, or that his affection for her was any less ardent at the time of the trial than it was when she left his home and he shed tears at the parting. Nor is there any positive evidence showing that the appellants, or either of them, ever, by word or deed, undertook to induce their son to abandon his wife, or to refuse to "return to her," as alleged in the complaint.

But it is claimed on behalf of the respondent that all of these necessary facts are made evident by certain circumstances appearing in the case, the first of which is that, two days after the respondent left the house of appellants, the appellant Mrs. Young told respondent's father that he

might as well understand that Philip would live no longer with Lucy. But whether Philip had told her so or whether she was merely expressing an opinion based upon some other source of information, is not disclosed. If it be conceded that this declaration is some evidence against the declarant, it must also be conceded, we think, that its weight is but little more than infinitesimal.

The next circumstance relied on is that, some days after their separation, Philip and Lucy made an arrangement to meet at the house of Mr. Ricketts, at a certain time, and, when the appointed time arrived, Lucy went there, but Philip did not. Now what does this testimony show? It simply shows that Philip failed to keep his word; but why he did so is a mere matter of speculation or conjecture, and is no more proof that his parents kept him away than it is that some unavoidable accident prevented him from going.

Again, it was shown by the testimony of Mrs. Ricketts, over the objection of defendants, that after the respondent had gone to reside with her parents, the appellant Mrs. Young requested the witness to use her influence to prevent Philip from again living with Lucy, and stated as a reason for making the request that if Philip did so his father would disinherit him, and that would break her heart. It is not shown, however, that Mrs. Ricketts ever mentioned the matter to Philip, or that anything further was said upon the subject by Mrs. Young. This conversation could, of course, in no way affect the appellant John Young and, as to Mrs. Mary Young herself, it simply showed a desire to have her son Philip continue to remain, as he then was, separate and apart from his wife, the respondent, and a willingness on her part to endeavor to induce him to so remain. But it falls far short of showing that Philip's action was in fact the result of influences brought to bear upon him by the appellants, or even by Mrs. Mary Young alone.

Taking the above evidence all together — and it is all there was that was material before the court when the motion for non-suit was made — it seems too clear for argument that it entirely failed to establish plaintiff's cause of action. No verdict could have been rationally based upon it in favor of the respondent, upon whom was imposed the burden of proof, and, therefore, the motion for a non-suit should have been granted.

The judgment is reversed and the cause remanded, with directions to enter a judgment of non-suit, upon defendant's motion.

STILES, SCOTT and HOYT, JJ., concur.

DUNBAR, C. J. (*concurring*).— I concur in the result because I do not think there is any testimony in the case to establish the allegations of the complaint. It probably established the fact that the defendants drove their daughter-in-law away from their home; but it goes no further than that; and that they certainly had a right to do.