(9 Misc. Rep. 82.)

### POLLOCK v. POLLOCK.

(Common Pleas of New York City and County, General Term. June 4, 1894.)

1. APPEAL—ORDER REFUSING NEW TRIAL.

On appeal from an order denying a motion for a new trial, a general term may set aside the verdict and order a new trial to prevent a failure of justice.

2. HUSBAND AND WIFE—ALIENATING HUSBAND'S AFFECTIONS—EVIDENCE.

In an action by a wife against her husband's father for alienating the husband's affections, evidence that defendant disapproved of his son's marriage, stated it to be his wish that the son might be extricated from the alliance, that he refused to receive plaintiff at his house, but received his son, does not alone justify a recovery, as defendant will be presumed to have acted from paternal solicitude, and not for the purpose of separating plaintiff and her husband.

Appeal from trial term.

Action by Ellen Pollock against Alexander Pollock to recover damages for loss of the society of plaintiff's husband. Defendant was the husband's father, and was charged with having unlawfully, wrongfully, and maliciously, by threats, persuasion, and offers of money, induced plaintiff's husband to abandon her. There was a judgment in favor of plaintiff, and defendant appeals. Reversed.

Argued before DALY, C. J., and BOOKSTAVER and BISCHOFF, JJ.

De Lancey Nicoll, for appellant.

Edward C. James, for respondent.

BISCHOFF, J. Repeated scrutiny of the testimony adduced on the trial is convincing that the facts afforded no justification for the recovery, and that the verdict was not the result of temperate and dispassionate deliberation on the part of the jury. It is therefore the prerogative, as well as the duty of the court, at general term, on appeal from an order denying a motion for a new trial, lest justice should be perverted, to set the verdict aside, and to order a new trial. Kummer v. Railroad Co., 2 Misc. Rep. 298, 21 N. Y. Supp. 941; Hamilton v. Railroad Co., 53 N. Y. 25, 30; Hynes v. McDermott, 7 Abb. N. C. 98; Engel v. Schoolherr, 12 Daly, 417; Schwinger v. Raymond, 105 N. Y. 648, 11 N. E. 952.

The plaintiff was permitted, under objection and exception by defendant's counsel, to testify to statements made to her by her husband in the absence of the defendant, which, in effect, attributed the husband's abandonment of his wife to the persuasions and contrivances of the defendant; but the learned trial judge, mindful of the rule which interdicts such statements, as hearsay, limited their admission as part of the res gestae, and as tending to show the existing relation between husband and wife at the time. Willis v. Bernard, 8 Bing. 376; Gilchrist v. Bale, 8 Watts, 355; Palmer v.

Crook, 7 Gray, 418; Holtz v. Dick, 42 Ohio St. 23; Remsen v. Hay, 14 N. Y. Wkly. Dig. 443; Baker v. Baker, 16 Abb. N. C. 302. The subsequent proceedings on the trial, however, demonstrate that this limitation was disregarded, and that the statements of the husband to the plaintiff were given the effect of evidence against the defendant, which tended to establish the subject-matter of the husband's statements to his wife as the facts of which the defendant's liability was predicable. How utterly destitute the evidence was of every personal knowledge by the plaintiff of the defendant's alleged interference to wreck her marital happiness is best shown by her own testimony, given upon cross-examination when called in rebuttal:

"Were you ever present when Mr. Pollock threatened your husband? A. I was not. Q. Were you ever present when Mr. Alexander Pollock offered to bribe your husband? A. My husband was not present when I saw Alexander Pollock, but once. Q. I ask you if you were ever present when Mr. Alexander Pollock offered a bribe to your husband? A. No, sir."

Disregarding, as incompetent to establish the defendant's interference with the plaintiff's marital felicity, all testimony which was not given upon personal knowledge of the alleged facts narrated, the record, at most, shows that the defendant was displeased with his son's marriage with the plaintiff; that he did not approve it; that, notwithstanding, he gave his son employment in his business; that he supplied him with money, and harbored and sheltered him at his home; that he stated it to be his wish that his son might be extricated from a marital alliance which paternal solicitude, perhaps unwisely, prompted him to regard as foreboding future infelicity for his son; that he declined to receive the plaintiff as a member of his family, and at his home; that on several occasions, when the plaintiff invaded his home and place of business, he caused her to be ejected; and that he, further, declined to assist her in the restoration of her child, which her husband had caused to be taken from her. But these facts did not justify the recovery. It yet remains to be judicially sanctioned that parental solicitude for a child's felicity is a reprehensible quality, and that the natural grief and displeasure of the parent because of the child's marital alliance, which to the former seems apprehensive of the latter's future discontent, must give way to rejoicing, lest the parent should be exposed to liability in damages for having, by his disapproval, deprived his child's spouse from the enjoyment of his or her anticipated advantages of the marriage, or that because of a marriage of the child, which the parent conceives to be ill-fated, the latter must, to avoid a similar liability, cast the former out, decline any longer to receive his child in his family, and refuse to succor it by means of employment, shelter, and tender consideration. Neither does the parental roof, by the child's marriage, become an open asylum or place of refuge for any but those to whom the parent extends the privilege of enjoying it as such. The marriage of the child imposes no obligation upon the parent to receive within the bosom of his own family, or at his place of business, any person other than one present at the parent's invitation, or with his con-

sent. The defendant was under no legal duty towards the plain-
tiff, to assist her in the restoration of her child. The evidence fails
to show that he was instrumental in removing the child; but, even
if that be otherwise, it must be borne in mind that this action was
to recover for the loss of the consortium of the husband. Increased
intensity of the proof is required in actions of this character, when
recovery is sought against a parent. The motives of a parent, in
harboring, sheltering, and otherwise extending aid and assistance
to, a child, are presumed to be good, until the contrary is shown.
Such is the current of opinion of text writers and such is ruled in
adjudged and reported cases. "The motives   *   *   *   of a parent
are presumed good." 9 Am. & Eng. Enc. Law, p. 834. "Not only
a parent or child, but a stranger, may give shelter to a wife who has
left her husband; but the motives of such harborer are important,
and must not be to separate husband and wife. Those of a parent
are presumed good." Stew. Husb. & Wife, § 78. "Parents and
near relatives stand on a different footing from strangers." Schou-
ler, Husb. & Wife, § 64. "If, however, the interference is by the
parents of the wife, on an assumption that the wife is ill-treated to
an extent that justifies her in withdrawing from her husband's socie-
ty and control, it may reasonably be presumed that they have acted
with commendable motives, and a clear case of want of justification
may be justly required to be shown before they should be held re-
sponsible." Cooley, Torts, p. 224. "A father's house is always
open to his children; and, whether they be married or unmarried,
it is still to them a refuge from evil, and a consolation in distress.
Natural affection establishes and consecrates this asylum." "Ac-
cording to Lord Coke, 'it is nature's profession to assist, maintain,
and console the child.'" "Bad or unworthy motives cannot be pre-
sumed. They ought to be positively shown, or necessarily deduced
from the facts and circumstances detailed." Kent, C. J., in Hutche-
son v. Peck, 5 Johns. 196. "Much will be forgiven the parents of
a wife, who honestly interferes in her behalf, though the interference
was wholly unnecessary, and may have been detrimental to her in-
terest and happiness, as well as that of her husband." Holtz v.
Dick, 42 Ohio St. 23. "Nor is the guilty agency of the defend-
ant to be inferred from the fact that the plaintiff's wife, on separat-
ing from him, went to the house of the defendants, and remained
with them. It was her former home. They were her parents."
Burnett v. Burkhead, 21 Ark. 79.

Observing the difference in the degree of proof which should be
required for the purposes of a recovery for the loss of consortium in
actions against parents and strangers, we are emphatically of the
opinion that the verdict in the case at bar was not only against
the weight of the evidence, but without sufficient evidence. Ac-
cordingly, the judgment and order denying the motion for a new
trial made at the trial term should be reversed, and a new trial be
had, with costs to the appellant, to abide the event. The foregoing
conclusion renders it unnecessary to discuss the order denying de-
fendant's motion for a new trial made at special term. We are of
the opinion that the order was properly made, and that it should be

affirmed. Judgment and order of the trial term reversed, and new trial granted, with costs to appellant, to abide the event. Order of the special term affirmed, with costs.

BOOKSTAVER, J., concurs.

DALY, C. J. (concurring). I think that there was sufficient evidence to sustain a verdict in favor of the plaintiff, but am of opinion that the verdict was excessive in amount, and for that reason a new trial should be ordered.