VIRGILO MULTER *vs.* JOHN W. KNIBBS & another.

Middlesex.    December 10, 1906. — January 3, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Husband and Wife.    Parent and Child.    Alienation of Affection.    Evidence,* Presumptions and burden of proof.

In an action by a husband against the father of his wife for enticing her away, alienating her affections and harboring and secreting her, it is not enough for the plaintiff to show that the defendant performed the acts charged. The burden is upon him to show that the defendant was prompted by malice in what he said and did, and to overcome the presumption that the defendant acted under the influence of natural affection and for what he believed to be the good of his child.

In an action by a husband against the father of his wife for enticing her away, alienating her affections and harboring and secreting her, if there is evidence that the defendant, while his daughter was in his care, at first denied to the plaintiff that he had any knowledge of her whereabouts, and then refused to give the plaintiff any information, saying "I don't care anything about your wishes I am running this thing now," that the defendant told one witness that he "came near kicking her out of the cellar" when he learned that she had married the plaintiff, and said that the plaintiff "couldn't see her, and that he had no right to see her," and told another witness that he was going to have his own way about this, that the plaintiff could not live with his girl, and that he would spend the last cent he had before he would consent to this man's having his daughter, that the defendant told the plaintiff's mother, when she said to him that she could not agree to the annulment of the marriage and wished there might be some reconciliation, "I don't care whether you agree to it or not, it is going as I say. You have had your way all the way through and now I want you to understand I shall have mine," and that when the plaintiff's mother said that she feared for his daughter's health he answered "Well, I don't," although the defendant introduces evidence tending strongly to show that he was actuated wholly by a desire to protect his daughter from the evils that

might follow a hasty and ill considered marriage and that his object was to secure her welfare, the question whether the defendant in what he did was actuated by malice toward the plaintiff is for the jury.

TORT by a husband against the father and mother of his wife for enticing away the plaintiff's wife and inducing her not to live with him and secreting and harboring her. Writ dated October 19, 1904.

In the Superior Court *Hitchcock*, J. ordered the jury to return a verdict for the defendants; and the plaintiff alleged exceptions.

*J. J. Shaughnessy*, (*F. P. O'Donnell*, with him,) for the plaintiff.

*E. R. Anderson*, (*A. T. Smith* with him,) for the defendants.

SHELDON, J. The verdict for the defendant Lila E. Knibbs was rightly ordered. We find no evidence that anything was done directly by her which trespassed upon the marital rights of the plaintiff; and the presumption of fact by which a husband may sometimes be held to answer for acts wrongfully done by his wife in his presence cannot be so applied as to make her responsible for any of his tortious acts.

But somewhat different considerations are applicable to the case of the male defendant.

In an action of this kind, brought by a husband against the father of his wife, upon the allegations that the defendant has enticed the plaintiff's wife away from him, alienated her affections, persuaded and induced her not to live with him, and has harbored, secreted and concealed her, it is not (as it might be in an action against a stranger) enough to show that the defendant actually has performed the acts charged, and that they have resulted in an abandonment of the plaintiff by his wife. There is a material difference between the acts of a parent and those of a mere intermeddler. Even in the latter case, a defendant may disprove any intent on his part, in advising the wife, to cause a separation, and may show that his advice was given honestly. *Tasker* v. *Stanley*, 153 Mass. 148. But the rights and the corresponding duties of a parent are much greater than those of a stranger; and much stronger evidence is required to maintain an action against him. It is proper for him to give to his daughter such advice and to bring such motives of

persuasion or inducement to bear upon her as he fairly and honestly considers to be called for by her best interests; and he is not liable to her husband in damages for her desertion resulting therefrom unless he has been actuated by malice or ill will towards the plaintiff, and not by a proper parental regard for the welfare and happiness of his child. In such an action, the material question is the intent with which the parent acted, rather than the wisdom or even the justice of the course which he took. These questions have arisen in other jurisdictions; and so far as we have been able to discover they always have been answered in the same way. The leading case is *Hutcheson* v. *Peck*, 5 Johns. 196; and the doctrine there laid down has commanded assent. *Oakman* v. *Belden*, 94 Maine, 280. *Smith* v. *Lyke*, 13 Hun, 204. *Holtz* v. *Dick*, 42 Ohio S·. 23. *Westlake* v. *Westlake*, 34 Ohio St. 621. *Rice* v. *Rice*, 104 Mich. 371. *White* v. *Ross*, 47 Mich. 172. *Tucker* v. *Tucker*, 74 Miss. 93. *Payne* v. *Williams*, 4 Baxt. 583. *Glass* v. *Bennett*, 89 Tenn. 478. *Brown* v. *Brown*, 124 N. C. 19. *Huling* v. *Huling*, 32 Ill. App. 519. *Reed* v. *Reed*, 6 Ind. App. 317. He may in good faith and for her own welfare advise his daughter to abandon her husband, if he fairly and honestly believes that the continuance of the marriage relation will tend to injure her health or to destroy her peace of mind, and may persuade her by proper and reasonable arguments to do so, without being liable to her husband, even though it may turn out that he acted upon mistaken premises or false information, and that the results of his intervention have been unfortunate. *Oakman* v. *Belden*, 94 Maine, 280. *Payne* v. *Williams*, 4 Baxt. 583. *Tucker* v. *Tucker*, 74 Miss. 93. He may tell her that by returning to her husband she will lose the share of his estate which she otherwise would receive. *Hutcheson* v. *Peck*, 5 Johns. 196, 207. And the burden is upon the plaintiff to show that the defendant has been prompted by malice in what he has said and done, and to overcome the presumption that he acted under the influence of natural affection and for what he believed to be the real good of his child. *Bennett* v. *Smith*, 21 Barb. 439. *Pollock* v. *Pollock*, 9 Misc. (N. Y.) 82. *White* v. *Ross*, 47 Mich. 172. *Westlake* v. *Westlake*, 34 Ohio St. 621. *Brown* v. *Brown*, 124 N. C. 19. *Young* v. *Young*, 8 Wash. 181. *Reed* v. *Reed*,

6 Ind. App. 317. But if there is evidence upon which the jury would have a right to find that the defendant has actively interfered to cause his daughter to abandon her husband, and has deprived him of her affections and of the comfort and solace of her society, and has done this from malice to the plaintiff and not for the purpose of affording proper protection to his child and furthering her true welfare, then the case must be left to the jury, with the instruction that if these facts are proved the action may be maintained. *Holtz* v. *Dick*, 42 Ohio St. 23. *Price* v. *Price*, 91 Iowa, 693. *Tucker* v. *Tucker*, 74 Miss. 93. *Bennett* v. *Smith*, 21 Barb. 439. *Williams* v. *Williams*, 20 Col. 51. *Railsback* v. *Railsback*, 12 Ind. App. 659. This was recognized by all the judges in *Hutcheson* v. *Peck*, 5 Johns. 196. The question accordingly is whether there was such evidence in this case.

There was evidence that the male defendant, while his daughter was in his care, at first denied to the plaintiff that he had any knowledge of her whereabouts, and then refused to give any information to the plaintiff, saying, " I don't care anything about your wishes I am running this thing now." One witness testified that the defendant said he "came near kicking her out of the cellar" when he learned that she had married the plaintiff; that the plaintiff " couldn't see her, and that he had no right to see her." Another witness testified that the defendant said he was going to have his own way about this, the plaintiff could not live with his girl, that he would spend the last cent he had before he would consent to this man's having his daughter. The plaintiff's mother testified that when she told the defendant that she could not agree to the annulment of the marriage and wished there might be some reconciliation, he answered: " I don't care whether you agree to it or not, it is going as I say. You have had your way all the way through and now I want you to understand I shall have mine "; and that when she said, " I fear for Lila's health," he answered, " Well, I don't." The jury might say that this testimony indicated that he was acting from anger and ill will to the plaintiff and not from regard to the good of his daughter. No doubt much of the testimony as to what he said and did tended strongly to show that he was actuated wholly by a desire to

protect his daughter from the evils that might follow a hasty and ill considered marriage, and that his object was to secure her welfare ; indeed, it may be that this was the weight of the testimony ; but we think that the question was for the jury.

Judgment should be entered on the verdict for the female defendant ; but as to the male defendant the entry must be

*Exceptions sustained.*