## BRISON *et al.* v. McKELLOP.

Nos. 3190 and 3896.   Opinion Filed January 19, 1914.

(138 Pac. 154.)

1. **HUSBAND AND WIFE**—Alienation of Affections—Burden of Proof—Good Faith. In an action by either the husband or wife against the parents of the other for alienation of affections, it must appear that there had been a direct interference on defendants' part sufficient to satisfy the jury that the alienation was caused by the defendants, and the burden of proof is upon the plaintiff to show such interference.

   And where the father or mother is charged with the alienation, the quo animo is said to be the important consideration, although it appears that a parent directly interferes, as by giving to a son or daughter advice on his or her domestic affairs, and the other will have no cause of action against the parent, though the result of the parent's action is the alienation of the husband's or wife's affection, if such parent acts in good faith; and the motive of the parent in such case is presumed to be good until the contrary is proved.

2. **SAME**—Quantum of Proof. "In actions against parents of either the husband or wife of the plaintiff, a much stronger rule prevails concerning the burden of proof, and plaintiff must not only show improper motives of the parents, but that the alienation was, in a sense, maliciously brought about. Where the action is against a stranger, the plaintiff need only show that it was wrongfully brought about."

3. **SAME**—Declarations. The rule of evidence is that the declarations of the husband, made in the absence of the defendant, as to the cause of his abandoning or putting away his wife, are not admissible, nor the declarations of the wife, in an action for enticing away the wife.

4. **SAME**—Ground for Reversal—Admission of Evidence. "The admission of incompetent and immaterial evidence that appears to

have prejudiced the substantial rights of the party objecting to the admission thereof is reversible error.'' **Meek v. Daugherty,** 21 Okla. 859, 97 Pac. 557.

5. **SAME—Hearsay Evidence.** ''Hearsay evidence having been admitted on the trial, which was liable to inflame the minds of the jury and prejudice them against the losing party, will cause reversal on review in this court.'' **Bash v. Howald,** 27 Okla. 462, 112 Pac. 1125.

(Syllabus by Harrison, C.)

*Error from Superior Court, Muskogee County;*
*Farrar L. McCain, Judge.*

Action by Evelyn McKellop against Susie Brison and another. Judgment for plaintiff, and defendants bring error, and from a denial of their petition for a new trial for newly discovered evidence, they appeal. Reversed and remanded.

*N. A. Gibson (W. G. Robertson,* of counsel), for plaintiffs in error.

*S. M. Rutherford, Bailey, Wyand & Moon,* and *Alvin F. Molony,* for defendant in error.

Opinion by HARRISON, C. No. 3190 was an action by Evelyn McKellop against Susie and W. M. Brison for damages for willfully and maliciously alienating the affections of her husband, Guy McKellop. Susie Brison was the mother, and W. M. Brison the stepfather, of Guy McKellop. The cause was tried in March, 1911, and judgment rendered in favor of Evelyn McKellop in the sum of $10,000, $5,000 of which were for actual and $5,000 for exemplary damages. This judgment was appealed from by Susie and W. M. Brison, and the cause filed in this court October 19, 1911. Before the appeal was filed, however, to wit, on July 3, 1911, Susie and W. M. Brison, defendants below, filed a petition for a new trial on the grounds of newly discovered evidence, and from the judgment of the court at a later date denying a new trial, they appeal to this court, such cause being No. 3896, and by agreement the two causes are consolidated.

While a determination of the questions presented in No. 3190 are to an extent affected by the subsequent developments in No.

3896, yet in order to dispose of the questions presented in each case clearly, we will first consider those presented in No. 3190. There are a number of assignments of error contended for; but as there are some decisive propositions involved, a determination of which disposes of the other assignments, we will not notice each assignment separately.

To begin with, let it be borne in mind that the action was brought against defendants for willfully and maliciously alienating the affections of plaintiff's husband and causing divorce proceedings. In cases of this character it is well settled as a general rule, and we think a wise and just one, that recovery cannot be had unless it appears, either from positive testimony or by strong valid inference, that the acts complained of were inspired by malice; that the motive was willful and malicious. See 21 Cyc. 1619, 1620; 15 Am. & Eng. (2d Ed.) 66, 67; 3 Elliott on Ev. sec. 1643, and cases cited in notes supporting the text in each of the above authorities. Also *Reed v. Reed,* 6 Ind. App. 317, 33 N. E. 638, 51 Am. St. Rep. 310; *Westlake v. Westlake,* 34 Ohio St. 621, 32 Am. Rep. 397; *Hutcheson v. Peck,* 5 Johns. (N. Y.) 196; *Tucker v. Tucker,* 74 Miss. 93, 19 South. 955, 32 L. R. A. 623; *Multer v. Knibbs,* 193 Mass. 556, 79 N. E. 762, 9 L. R. A. (N. S.) 322; 9 Ann. Cas. 958; *Brown v. Brown,* 124 N. C. 19, 32 S. E. 320, 70 Am. St. Rep. 574; *Leavell v. Leavell,* 122 Mo. App. 654, 99 S. W. 460; *Cornelius v. Cornelius,* 233 Mo. 1, 135 S. E. 65; *Zimmerman v. Whiteley,* 134 Mich. 39, 95 N. W. 989; *Beisel v. Gerlach,* 221 Pa. 232, 70 Atl. 721, 18 L. R. A. (N. S.) 516.

It is also a fundamental principle of pleading that the burden is upon the plaintiff to prove the facts necessary to a recovery, and in actions of this character, especially in actions by either the husband or wife against the parents of the other, the burden is heavier, and the degree of proof required stronger, than in ordinary actions, or even in actions of this character against a stranger. Elliott on Ev. (volume 3, sec. 1643) says:

"In actions against parents of either the husband or wife of the plaintiff, a much stronger rule prevails concerning the burden of proof, and plaintiff must not only show improper motives

of the parents, but that the alienation was, in a sense, maliciously brought about. Where the action is against a stranger, the plaintiff need only show that it was wrongfully brought about."

In *Hutcheson v. Peck, supra,* Chief Justice Kent of the Supreme Court of New York said:

"I am also for a new trial. If the defendant did not stand in the relation of father to the plaintiff's wife, I should not, perhaps, be inclined to interfere with the verdict. But that relationship gives the case a new and peculiar interest; this is the first action of the kind I have met with, brought against the father. A father's house is always open to his children; and, whether they be married or unmarried, it is still to them a refuge from evil and a consolation in distress. Natural affection establishes and consecrates this asylum. The father is under even a legal obligation to maintain his children and grandchildren, if he be competent, and they unable to maintain themselves; and, according to Lord Coke, it is 'nature's profession to assist, maintain, and console the child.' I should require, therefore, more proof to sustain the action against the father than against a stranger. It ought to appear either that he detains the wife against her will, or that he entices her away from her husband, from improper motives. Bad or unworthy motives cannot be presumed. They ought to be positively shown, or necessarily deduced from the facts and circumstances detailed. This principle appears to me to preserve, in due dependence upon each other, and to maintain in harmony, the equally strong and sacred interests of the parent and the husband."

In *Multer v. Knibbs, supra,* the Supreme Court of Massachusetts said:

"In an action of this kind, brought by a husband against the father of his wife, upon the allegations that the defendant has enticed the plaintiff's wife away from him, alienated her affections, persuaded and induced her not to live with him, and has harbored, secreted, and concealed her, it is not (as it might be in an action against a stranger) enough to show that the defendant actually has performed the acts charged, and that they have resulted in an abandonment of the plaintiff by his wife. There is a material difference between the acts of a parent and those of a mere intermeddler. Even in the latter case, a defendant may disprove any intent on his part, in advising the wife, to cause a separation, and may show that his advice was given honestly. *Tasker v. Stanley,* 153 Mass. 148, 26 N. E. 417 [10 L. R. A. 468]. But the rights and the corresponding duties of

a parent are much greater than those of a stranger, and much stronger evidence is required to maintain an action against him. * * * And the burden is upon the plaintiff to show that the defendant has been prompted by malice in what he has said and done, and to overcome the presumption that he acted under the influence of natural affection, and for what he believed to be the real good of his child. *Bennett v. Smith,* 21 Barb. (N. Y.) 439; *Pollock v. Pollock,* 9 Misc. Rep. 82, 29 N. Y. Supp. 37; *White v. Ross,* 47 Mich. 172, 10 N. W. 188; *Westlake v. Westlake,* 34 Ohio St. 621 [32 Am. Rep. 397]; *Brown v. Brown,* 124 N. C. 19, 32 S. E. 320 [70 Am. St. Rep. 574]; *Young v. Young,* 8 Wash. 81, 35 Pac. 592; *Reed v. Reed,* 6 Ind. App. 317, 33 N. E. 638 [51 Am. St. Rep. 310]."

"Direct Act of Interference.—In order to sustain an action for the alienation of the husband's affections it must appear, in addition to the fact of alienation or the fact of the husband's infatuation for the defendant, that there had been a direct interference on the defendant's part, sufficient to satisfy the jury that the alienation was caused by the defendant, and the burden of proof is on the plaintiff to show such interference.

"Actions Against Husband's Parents.—A distinction seems to be made between an action against a stranger and an action against the parents of the husband. Where the father or mother is charged with the alienation, the *quo animo* is said to be the important consideration. Parents are under obligation by the law of nature to protect their children from injury and relieve them when in distress, and this obligation is recognized by the common law. Accordingly it appears that, though a parent directly interferes, as by giving to his son advice on his domestic affairs, the wife will have no cause of action against the parent, though the result of his action is the alienation of the husband's affections, if he acts in good faith; and the motive of the parent in such case is presumed to be good until the contrary is proved." (15 Am. & Eng. Enc. of Law, 865, and notes cited.)

Thus the burden was upon the plaintiff to prove, not only that her husband's affections were alienated, and that they were alienated by the defendants, but that they were alienated through malice. These were the issues which plaintiff tendered, and the issues which the law required her to maintain; and the burden was upon her to maintain same by a preponderance of competent testimony in order to recover.

This brings us to the decisive question involved in the trial, namely, the contention that incompetent testimony was admitted. The plaintiff was permitted, over the objection of defendants, to state what her husband had told her that his mother had said to him; such statements having been made some three months after the separation between plaintiff and her husband, and in the absence of either of defendants. Mrs. Olive Hammer, mother of plaintiff, was also permitted to testify to similar statements made by the husband. It is contended, however, by counsel for defendant in error, that the testimony of Mrs. Olive Hammer was not properly excepted to; that when Mrs. Hammer, mother of plaintiff, was called to the stand, and asked as to conversations she had had with plaintiff, counsel for defendants stated to the court, "This goes in under our objection," and the court replied, "All of this testimony is admitted for the one purpose only, which I have stated," the reason given by the court, "I am admitting this for the purpose of showing his feelings toward her." But it is unnecessary to determine that question here, for, aside from the testimony of Mrs. Olive Hammer, the testimony of plaintiff herself, which was duly excepted to, was clearly incompetent and decidedly prejudicial to the rights of defendants.

In *Westlake v. Westlake,* 34 Ohio St. 634, 32 Am. Rep. 397, which was an action by the wife against the parents of her husband, the Supreme Court of Ohio said:

"Did the court err in admitting the declaration of the husband, made in the absence of the defendant, to the effect that the defendant was doing all he could to bring about a separation between the plaintiff and her husband? We think it did. This was clearly hearsay testimony, and nothing else. In an action for enticing away the plaintiff's wife, the declarations of the wife are not admissible in evidence. *Winsmore v. Greenbank,* Willes, 577. The confessions of the wife, in an action by the husband against her seducer, are not evidence against the defendant. Bull. N. P. 28. So, in an action against a third party for inducing the plaintiff's husband to send her away, the declarations of the husband, made in the absence of the defendant, are not admissible in evidence. Did the court err in refusing to charge that, to entitle the plaintiff to recover, the defendant

must have maliciously caused the separation of the husband and wife? This charge ought to have been given. * * * For error in admitting the declarations of the husband, and in refusing to charge as requested, the judgment must be reversed, and the cause remanded to the court of common pleas for a new trial."

This has become the general rule in such cases. See *Stanley v. Stanley,* 27 Wash. 570, 68 Pac. 187; *Leavell v. Leavell,* 122 Mo. App. 654, 99 S. W. 460.

In 1 Enc. of Ev. the rule is stated thus:

"Except as hereinbefore stated, the declarations of the husband, made in the absence of the defendant, as to the cause of his abandoning or putting away his wife, are not admissible, nor the declarations of the wife in an action for enticing away the wife." (Page 749 and authorities cited in notes.)

Hence, inasmuch as this testimony was inadmissible, and this court being unable to estimate the extent to which it prejudiced the substantial rights of defendants, and being unable to say what the verdict would have been with this incompetent testimony eliminated, we must abide by the rule heretofore settled by this court that:

"The admission of incompetent and immaterial evidence, that appears to have prejudiced the substantial rights of the party objecting to the admission thereof, is reversible error." (*Meek v. Daugherty,* 21 Okla. 859, 97 Pac. 557.)

"Hearsay evidence, being admitted on the trial, which was liable to inflame the minds of the jury and to prejudice them against the losing party, will cause reversal on review in this court." (*Bash v. Howald,* 27 Okla. 462, 112 Pac. 1125.)

Also *Jackson v. Thornton,* 8 Okla. 331, 58 Pac. 951; *Barnett v. Ruyle,* 9 Okla. 635, 60 Pac. 243; *Boise v. A., T. & S. F. Ry. Co.,* 6 Okla. 243, 51 Pac. 662.

It is also contended that the substantial rights of defendants were prejudiced by plaintiff, while a witness on the stand, being asked by her counsel the following:

"Q. You say I advised you to bring this suit. I will ask you if you didn't advise with me as to what you were going to do, as to whether you had damages in the matter, or could get damages? A. Yes, sir. Q. I will ask you if I didn't advise you

that you had a cause of action against Mrs. Brison for alienating the affections of your husband? A. Yes, sir."

This testimony was also admitted over the objection of defendants, and duly excepted to. We agree with counsel for plaintiffs in error that this testimony was at least "calculated to prejudice the defendants in the eyes of the jury." It is impossible to say what effect it may have had on their minds. It is not unreasonable to suppose that the private opinion of an attorney who is well known and esteemed by the jurors of his county, who has a reputation as a man of honor, as well as a lawyer of ability and learning, would have more or less influence with the jury. It is true the court in overruling the objection to this testimony said, "I will permit it as a matter of personal privilege," but we are unable to see wherein the reasons given by the court would cure the injury which such testimony might probably have inflicted. We should consider it a very unsafe rule to allow each attorney in every case to testify as to what his private opinion was of the merits of the case. Such a rule might ultimately lead to a mere weighing of the opinions of attorneys, or possibly to a mere test of their veracity, either of which cases might give rise to embarrassing circumstances. Now, the admission of this testimony, being considered in the light of the fact that there was some evidence which tended to show that the whole trouble between plaintiff and her husband grew out of some alleged improper relations on her part with one Throckmorton, and as there is no testimony whatever that even tends to show that the defendants, the parents, ever interfered with the domestic affairs of Evelyn and Guy, or in any way advised them to separate until after the discovery of such supposed improper relations, the jury might, in the absence of the incompetent testimony which was admitted, have concluded that whatever part the defendants did take in the matter was prompted solely from a parental care for the welfare of their son and the good name of their grandchildren; and this condition of the case being viewed in the light of the fact that the subsequent petition for new trial was supported by affidavits of fourteen of her nearest neighbors tending to show that Evelyn's relations with Throck-

morton had, for more than a year, been very improper, and considering the motives in the former case, and viewing them in the light of the evidence tendered in the latter case, we believe a new trial should have been granted.

The judgments are therefore reversed, and the two causes remanded for consolidation and retrial.

By the Court: It is so ordered.