**HAFER et al. v. LEMON.**

No. 28015. April 5, 1938.

Rehearing Denied May 17, 1938.

Pruett & Wamsley, for plaintiffs in error.

Ted Morgan, for defendant in error.

GIBSON, J. Reford Lemon commenced this action in the district court of Caddo county against W. M. Hafer and H. C. Hafer to recover damages for the alleged alienation of the affections of his wife, Ruby Lemon. From a judgment upon a verdict for plaintiff, the defendants have appealed. The parties are here referred to in the order of their appearance at the trial.

W. M. Hafer and H. C. Hafer are the grandfather and father, respectively, of the said Ruby Lemon. Plaintiff charges that the defendants, acting separately and together, and at a time when plaintiff and his wife were living happily together and enjoying mutual love and affection, and the service of one to the other, contrived their separation and did by false and fraudulent representations persuade his said wife to leave him and obtain a divorce.

The main issues were, in substance, that defendants came to the home of plaintiff, and maliciously and without plaintiff's consent, took the said Ruby Lemon away and removed her to the home of defendant H. C. Hafer; that thereafter the defendant W. M. Hafer falsely and maliciously swore to an information charging plaintiff with threatening the life of his wife, procured

his arrest on said charge, and exhibited him handcuffed and under arrest before her, and thereafter had him placed in jail; that said defendants, taking advantage of the present nervous and excitable condition of the said Ruby Lemon caused by pregnancy, succeeded in influencing and persuading her to believe the false and malicious charges aforesaid, thereby causing her to cease to love plaintiff and to lose her affection for him.

Defendants assign as error the action of the trial court in refusing and ruling out certain alleged competent and legal evidence offered on the part of defendants.

This assignment deals with the testimony of Ruby Lemon, who was called as a witness for defendants. The controversy arising over the proffered evidence was occasioned primarily by the court's interpretation and application of section 272, O. S. 1931, the material provisions of which are as follows:

"The following persons shall be incompetent to testify: * * * Husband and wife, for or against each other, except concerning transactions in which one acted as the agent of the other, or when they are joint parties and have a joint interest in the action; but in no case shall either be permitted to testify concerning any communication made by one to the other during the marriage, whether called while that relation subsisted, or afterwards."

At the time of the trial Ruby Lemon was not the wife of Reford Lemon. They had theretofore been legally divorced. The defendants, in view of this circumstance, assumed the position that Ruby Lemon was a competent witness for every purpose and could testify to all material matters coming to her knowledge during the marital relationship, except privileged communications passing between her and her husband during that period. The trial court was not in agreement with this view, but restricted the witness within the narrow scope to which a former spouse is ordinarily limited by reason of the statute. This ruling constituted error.

In the absence of agency or joint interest of husband and wife, one cannot qualify as a witness in an action to which the other is a party. But the competency of either depends upon the relationship at the time of the trial; the application of the statute is relaxed if the marital relationship has ceased to exist. St. Louis & S. F. Ry. Co. v. Goode, 42 Okla. 784, 142 P. 1185. The rule as there applied in the ordinary case is stated as follows:

"Neither the statute nor the common law prevent one spouse, after the marriage relation has terminated, from testifying, in a case in which the other is a party, as to independent facts, within the knowledge of the witness, and not coming within the definition of privileged communications."

See, also, Adkins v. Wright, 37 Okla. 771, 131 P. 686; Sands v. David Bradley & Co., 36 Okla. 649, 129 P. 732. Reason and the weight of authority favor this view. 70 C. J. 125.

Thus it is seen that in the ordinary case, where the marital relation no longer exists, the statute is relaxed, allowing the former husband or wife to give any competent testimony material to the issues, excluding only that evidence which may be classed as "concerning any communication made by one to the other during the marriage," or privileged communications.

In actions for alienation of affections, the statute has still a more limited application. Many communications, though ordinarily classed as privileged, are received as competent evidence. 70 C. J. 387, sec. 516. Such cases, with respect to the admission of evidence, occupy a position peculiar to themselves. As said in Worth v. Worth (Wyo.) 49 P.2d 649, as regards the rules governing the admissibility of evidence, "cases of alienation of affection are sui generis."

The paramount question in such case is whether the affections were actually alienated through the fault of the defendant; that is, the actual alienation of affection is the gist of plaintiff's action. Mussellem v. Frenn, 101 Okla. 45, 225 P. 370. If the action is against the parents of the spouse whose affection is allegedly alienated, there must be shown not only an alienation caused by their interference, but plaintiff must prove improper motive amounting to malice on their part. Plaintiff is without a cause of action if the motive was free from malice; the motive is presumed to be good until the contrary is proved. Brison v. McKellop, 41 Okla. 374, 138 P. 154. We apply this rule to grandparents (see 30 C. J. 1145, sec. 1020); it is stated in that case as follows:

"In an action by either the husband or wife against the parents of the other for alienation of affections, it must appear that there had been a direct interference on defendant's part sufficient to satisfy the jury that the alienation was caused by the defendants, and the burden of proof is upon the plaintiff to show such interference.

"And where the father or mother is charged with the alienation, the quo animo is said to be the important consideration, although it appears that a parent directly interferes, as by giving to a son or daughter advice on his or her domestic affairs, the other will have no cause of action against the parent. though the result of the parent's action is the alienation of the husband's or wife's affection, if such parent acts in good faith; and the motive of the parent in such case is presumed to be good until the contrary is proved."

In the instant case plaintiff testified that defendants came to his home and announced that they had come to take his wife and her belongings away, and that they did take her away. This occurrence seems to be the first alleged malicious act of defendants leading to the separation and the alienation of the wife's affections. In order to refute any implication of malice, or willful intent to cause a separation, defendants offered to prove by the testimony of Ruby Lemon that she and plaintiff were without sufficient room in their home, and that she had telephoned her mother to send the defendants after some of their things in order to relieve the crowded condition at home. The trial court erred in refusing this offer.

The offered testimony was competent evidence to show the actual purpose of the trip, and that the same was not motivated by malice. While it may be said with some degree of merit that the testimony was of little probative value, since the communication aforesaid was not made directly to defendants, it is not to be branded as hearsay in an action against parents for the alienation of the affections of a child. Malice of the parents is an important issue in such case, and the burden is upon plaintiff to establish that state of mind as existing in the parents. Brison v. McKellop, supra. In view of the fact that plaintiff's testimony concerning defendants' trip to his home may have raised some inference of malice, the defendants were entitled to refute or rebut that inference by evidence from which the jury might conclude that the aforesaid trip was actuated by some cause other than malice. The witness proposed to testify concerning a matter within her independent knowledge, the truthfulness of which did not depend upon the competency or credibility of another person. She sent word for defendants to come for a certain purpose. Her testimony as to that fact would constitute some evidence that defendants came in response to her request and for the purpose indicated, and was therefore of some probative force to nega-

tive any evidence of malice. Although the proffered evidence may partake somewhat of the nature of hearsay, under the relaxed rule governing the reception of evidence in cases of this character, where malice is an important issue, such evidence is nevertheless admissible. In support of this conclusion, we adopt the language of the Wyoming court in Worth v. Worth, supra, as follows:

"When a mental state or condition is in issue, such as motive, malice, or intent, an exception is made to the hearsay rule."

This language we apply with particularity to actions for the alienation of affections. See, also, 13 R. C. L. 1475, sec. 526.

Defendants offered to show by the testimony of the former wife, Ruby Lemon, that the plaintiff had carried a pistol previous to any of the alleged malicious acts of defendants and had at that time threatened to take his wife's life, to shoot her head off. The trial court in refusing this testimony committed error.

The testimony of a former spouse is in no way restricted by section 272, supra, except as to privileged communications between husband and wife. St. Louis & S. F. Ry. Co. v. Goode, supra. The threat of one spouse to commit a criminal offense against the other is not a privileged communication. While it has never heretofore become necessary for this court to pass upon this question, we have expressed our belief that the statute was not intended to exclude such testimony. Rowley v. Rowley, 144 Okla. 157, 290 P. 181. This expression of the court is in accord with the rule in New York as applied to alienation cases. Stillman v. Stillman, 187 N. Y. Supp. 383. In the instant case the state of the wife's affections for her husband was in issue. She was the only person in existence who could testify with certainty as to the state of her feelings toward him. To prohibit her from testifying to unlawful acts committed against her by her husband, acts that in their very nature would have no other effect than to lessen or totally destroy her affections for him, would be to deprive the defendants of the only defense available in such actions. We agree with the following statement of the Supreme Court of Iowa, found in Pooley v. Dutton, 147 N. W. 154:

"In an action by a husband for alienation of his wife's affections, brought against her parents, the testimony of the wife as to the effect on her of the husband's ill treatment of her was admissible."

And the language of the text in 30 C. J. 1141, may well be applied here. It reads as follows:

"In an action by the husband, evidence of his mistreatment of the wife is material in defense as tending to show that he himself, rather than defendant, was the cause of her leaving his home."

There is none better qualified than the wife to testify to such ill treatment, and where the marriage no longer subsists, she is a competent witness as to such matters.

Defendants also offered to prove by the testimony of Ruby Lemon that she had told defendants of the aforesaid threats and ill treatment of the plaintiff toward her; that she had requested them to procure the arrest of plaintiff and had assented thereto. This testimony, although concerning communications between the wife and defendants in plaintiff's absence, was admissible as bearing upon the motives actuating defendants, and, contrary to the trial court's ruling, the testimony of the defendant H. C. Hafer offered in corroboration of the above was admissible. The offered testimony of both of said witnesses was competent upon the question of defendants' motives.

In Kentucky the statute concerning the competency of husband or wife to testify as to communications between them is almost identical with our own section 272. The Court of Appeals of that state, in Wiley v. Howell, 182 S. W. 619, a case very similar to the present one, held that the divorced wife could testify concerning her private conversation with her father wherein she told him of plaintiff's ill treatment of her during the marriage relationship. The language of the court employed in deciding that question is particularly appropriate here, and is quoted as follows:

"Nevertheless the witness should have been permitted to tell whether or not she told her father of appellee's treatment of her, and, if so, when and what she told him. The fact that she imparted this information to her father and what she told him are not within the prohibition of the above section as construed, and it was highly prejudicial to appellant to deny him this evidence, as the very gist of the action against him was whether or not he acted reasonably and in good faith in what he said and did thereafter. She had a right, when troubles arose between her and her husband, to apply to her father for advice and succor, and it was necessary that the jury in trying this case, in order to determine whether the father was acting wrongfully and maliciously, or in good faith and as he had a right to do, to know

582

what actuated him. Therefore he had a right to present to the jury evidence of what his daughter had told him about her husband's treatment of her, so that the jury might know what was operating upon his mind in what he said or did, if anything, with reference to the separation of these people. Without knowing what had been told him by his daughter the jury would not know under what information he was acting, and could not determine whether he was acting rightfully or wrongfully."

Defendants assign as error the trial court's refusal to direct a verdict in their favor.

It is charged that plaintiff wholly failed to sustain the burden of establishing malice on the part of defendants; that there was a total failure of evidence to overcome the presumption of good faith.

While the presumption favors good faith and the burden of proof is upon plaintiff to establish malice, the plaintiff in such case is not required to produce statements of the defendant amounting to positive admissions of bad faith. The acts of the defendant may be such that an inference of malice may arise therefrom sufficient to overcome the aforesaid presumption. If malice may not be inferred from the acts of the one charged therewith, the same could seldom be established. As said by the Supreme Court of Washington in Jones v. Jones, 164 P. 757, 758:

"Malice, like other mental processes, is as well shown by conduct as it is by the testimony of the person whose condition of mind is the subject of inquiry."

In the instant case there were certain acts and statements attributed to defendants by plaintiff's testimony that would raise a reasonable inference of malice sufficient to overcome the presumption of good faith. The trial court did not err in refusing the peremptory instruction.

Defendants next contend that the trial court erred in not abating the action on their plea of another action pending.

It was shown that a like action had been filed by plaintiff against defendants in Blaine county and remained undisposed of at the time the present action was commenced, May 10, 1936. The answers in the present case containing the pleas in abatement were filed September 24, 1936. There is no evidence that the Blaine county action was pending at the time the answers herein were filed, or thereafter. By reason of the general rule that the burden rests upon the party interposing the plea to prove the pendency of another action (1 C. J.

106, sec. 162), and the rule that a dismissal of the prior action before the plea is filed defeats the plea (1 C. J. 94, sec. 131), we must hold that the trial court did not err in overruling the same. See, also, Smith v. Gibson, 150 Okla. 101, 300 P. 797; Oklahoma Press Pub. Co. v. Gulager, 168 Okla. 245, 32 P.2d 723.

By reason of the errors committed as aforesaid, the judgment of the trial court is reversed and the cause remanded, with directions to grant defendants a new trial.

BAYLESS, V. C. J., and RILEY, PHELPS, and DAVISON, JJ., concur.